## KAUFMAN BROS. & CO. V. THE FARLEY MANUFACTURING COMPANY.

1. **Assignment of Error:** INTERPRETATION. At the close of defendant's testimony, plaintiffs moved the court to strike out certain portions of it, which the court did, and then directed a verdict for plaintiffs. Defendant assigned as error that "the court erred in sustaining the motion made by plaintiffs at the close of defendant's testimony; and directing a verdict for the plaintiffs." *Held* that this assignment did not assume that plaintiffs' motion included a request to the court to direct a verdict for plaintiffs.

2. **Agency:** OF MANUFACTURERS DEALING WITH JOBBERS: AUTHORITY: CUSTOM: EVIDENCE. Where the agent of an Eastern manufacturer is engaged in introducing a certain brand of goods (cigars in this case) in the West, and is dealing with local jobbing houses in the discharge of his duties, the houses with which he thus deals have the right to presume that he possesses the authority usually exercised by agents in like cases. (See cases cited in opinion.) And where the question was as to the authority of such an agent to make contracts giving the jobbers exclusive right to sell the goods in a certain territory, *held* that the evidence of one who had long been a jobber of like goods in the territory in question, to the effect that it was the custom for the traveling agents in such cases to make contracts of the kind in question, ought to have been submitted to the jury on the question of the agent's authority.

3. **Contract:** MUTUALITY: EVIDENCE. Where the sufficiency of a contract, whereby plaintiffs were to furnish defendant with a certain brand of cigars for the exclusive sale thereof in certain territory, was questioned, on the ground that there was no agreement on the part of defendant to work up the trade, *held* that evidence showing that defendant bought cigars for sale in the territory, and that it was to have the goods for sale as long as it "pushed them, was sufficient to go to the jury on the question of an agreement to work up the trade.

Kaufman Bros. & Co. v. The Farley Manuf. Co.

4. ———: TO FURNISH GOODS FOR SALE: INTERPRETATION. A contract to furnish to a jobber a certain class of goods for sale in a specified territory is an agreement to furnish the goods as ordered by the jobber, and not only to fill orders taken by him.

5. ———: ———: RIGHT TO TERMINATE. Under a contract whereby plaintiffs, manufacturers, agreed to furnish defendant, a jobber, a certain brand of goods as long as it wanted or ordered them, or had sale for them, plaintiffs had not the right to cease furnishing the goods at their pleasure.

6. ———: ———: STATUTE OF FRAUDS. A contract whereby a manufacturer agreed to furnish a jobber a certain brand of goods for sale in a certain territory, so long as the latter had sale for them, and under which two orders for the goods had been filled, and one of them paid for, was not within the statute of frauds. The contract in such case was entire, and was in part performed.

7. ———: ———: EXCLUSIVE TERRITORY: DEFINITENESS. A contract by a manufacturer in New York to furnish to a jobber in Dubuque goods of a certain brand for the exclusive sale thereof in "Dubuque and the territory tributary thereto," is not so indefinite as to the territory embraced in its terms as to be invalid; especially where it was further agreed that the manufacturer was not to place the same goods for sale nearer than Omaha, on the· west, St. Louis, on the south, Chicago, on the east, and St. Paul, on the north.

8. Evidence: ORDER OF: DISCRETION OF COURT. The trial court may, in the exercise of its discretion, exclude testimony when offered out of due order.

9. Appeal: CONSIDERATION OF ERRORS: MOTION FOR NEW TRIAL FILED TOO LATE. Although no assignment of error which is based on the motion for a new trial in this case can be considered, because that motion was filed too late, yet, since exceptions were taken, and errors assigned, independent of that motion, this court may review and reverse the action of the court below. (See cases cited in opinion.

*Appeal from Dubuque District Court.*—HON. D. J. LENEHAN, Judge.

FILED, OCTOBER 28, 1889.

PLAINTIFFS sue for the purchase price of a quantity of cigars. Defendant admits the claim, and, by way of cross-action, claims damages for breach of contract for the delivery of cigars. From a judgment for plaintiffs, the defendant appeals.

*Utt Bros. & Michel*, for appellant.

*Powers & Lacy*, for appellees.

GRANGER, J.—This action was brought to recover of defendant the value of a quantity of cigars. The claim of plaintiffs is admitted, and the issues are upon the answer and reply. Plaintiffs are manufacturers and wholesale dealers in cigars in the City of New York. The defendant is a corporation doing business in Dubuque, Iowa, as jobbers, and their business includes the sale of cigars in Dubuque and the country tributary thereto. The averments of the cross-petition, in brief, are that in March, 1885, the plaintiff company agreed to give to the defendant the exclusive right to sell in Dubuque, and country tributary thereto, a certain brand of cigars known as "Our Bob," which brand the plaintiffs had the exclusive right to manufacture; that in consideration of the plaintiffs' agreement the defendant was to employ men to travel and sell such cigars, and establish a trade therein in said territory; that in pursuance of such agreement the defendant did employ men so to travel, who expended time and money in building up a trade for said cigars; that for the purpose of such trade plaintiffs were to ship the defendant cigars when ordered, and so long as defendant desired to deal in the cigar, or so long as the trade continued; that the agreement was observed by both parties to the twenty-third of June, 1885, when the plaintiffs violated the agreement by refusing to furnish cigars to the defendant for such trade. The plaintiffs deny these allegations of the cross-petition. At the trial in the district court the defendant introduced evidence tending to establish the contract, the breach and damage. At the close of the defendant's testimony, on motion of plaintiffs, the court struck out the evidence introduced on the question of damage, and as to the refusal of plaintiffs to furnish cigars, and directed the jury to return a verdict for plaintiffs for the amount of their claim.

682        SUPREME COURT OF IOWA,

Kaufman Bros. & Co. v. The Farley Manuf. Co.

I.   Appellees claim that alleged errors in the case cannot be considered, because the assignment is not sufficiently specific.   One assignment is that "the court erred in sustaining the motion made by plaintiff at the close of defendant's testimony, and directing a verdict for the plaintiff." The argument treats this assignment as involving a "misapprehension" of appellees' motion, to the extent of assuming that the motion asked the court to direct a verdict for plaintiffs.  It is true, the motion does not ask that, and we think it equally true that the assignment does not convey such a meaning.  It merely assigns error in sustaining the motion, whatever it was, and in directing the verdict as the court did.  Thus understood, there is no misapprehension, and the assignment calls attention directly to the error complained of, which is the purpose of the assignment.  It is true that of the assignments made some are unnecessary, being the same assignment made in different forms.  This practice is quite common, and induced by a spirit of caution to avoid failure in having the assignment considered. Other assignments we think are sufficient, and will receive notice.

*1. Assignment of error: interpretation.*

II.   We first notice the error assigned as to ruling on motion to strike the testimony.   The testimony is so directly involved in the consideration of this point that we set out a part of it, and will, as it becomes important, refer to other points.   J. K. Farley, for defendant, said: "Defendant company is and has been engaged for the past seven years in jobbing teas, coffees and other like groceries; also cigars and crackers. During all of that time I have been its secretary, treasurer and business manager.   The territory we covered is northern Iowa, southern Dakota, Minnesota as far as Red Wing, and southern Wisconsin, and northern Illinois.   For over seven years we have jobbed cigars over this territory, and have kept about five men on the road.   We buy our cigars from the manufacturers in the East.   The first business transaction we ever had

*2. Agency: of manufacturers dealing with jobbers: authority: custom: evidence.*

Kaufman Bros. & Co. v. The Farley Manuf. Co.

with the plaintiffs was in relation to their 'Our Bob' cigars. Mr. Katz, representing plaintiffs' firm, called on me in forepart of March, 1885. He told me he had a special brand of cigars he would like for us to take hold of, and talked a good deal about their merits, as being the finest thing on the market. It was having a big trade in the East, and he would like to have us take hold of it. He said it was the finest five-cent cigar made in New York City; that he wanted us to take hold of them, and talk of that character, and he would guaranty us a big sale on them, and that he would give us the exclusive sale of the cigar in Dubuque, and the territory tributary to it. That he wouldn't sell to anybody else in Dubuque; and Mr. Katz said that he would not sell the cigars any nearer than Omaha, on the west, St. Louis, on the south, Chicago, on the east, and St. Paul, on the north, so that they wouldn't conflict with us; and insisted in that way on me taking hold of the cigars. I told him that we had a large stock of cigars, and that we could not take hold of them without dropping something out; that it was an injury to us to do so; and he insisted, and at last we gave him an order, with the understanding, as stated, that we were to have the exclusive control of the cigars for Dubuque, and territory tributary, and he would not sell anybody else, as stated; and the cigars came in due time. A lot of advertising matter was also sent us,—street signs and such things. When Mr. Katz made these representations to me, I told him if his house would furnish us with goods, give us the exclusive sale for Dubuque, and the territory tributary, he could ship us a case of goods. He said, 'The house will do so,' and took the order. He said they would furnish us the goods as long as we pushed them. He [Katz] said they would furnish us the goods as long as we had a sale for them, and as we ordered them, and as long as we ordered them. The price was to be twenty-eight dollars per thousand. We were to make a large profit. After this agreement 1 gave an order to Mr. Katz for ten thousand cigars. Plaintiffs acknowledged the receipt of the order in

writing." If there was a contract, as alleged, it was made by an agent of the plaintiffs, and a ground of the motion is that it does not appear that such agent had authority to make the contract. It appears that one Katz was the agent of the plaintiffs, and as such was at Dubuque at the time the contract is alleged to have been made, and that he was selling defendant job lots of cigars, and a ten-thousand lot was shipped to defendant, and the receipt for the order speaks of it as being "through our Mr. Katz;" and of the fact of this agency we think there is no dispute; that the dispute is merely as to the extent of the agency. Such a question is, of course, one of fact. Was there, then, testimony such as to entitle the jury to pass on that question?— the precise question being, did the agent have authority to bind the plaintiffs to a contract as alleged?

Mr. D. D. Meyer was a witness for defendant, and gave testimony as follows: "Live in city of Dubuque. I have been engaged in manufacturing, jobbing and retailing cigars here and in this territory for twenty years. We procure most of our cigars from manufacturers in New York. We buy from their traveling salesmen who visit us. I know a general usage and custom, relating to the authority of these agents, giving exclusive right to sell a certain brand of cigars in a certain territory. This usage extends all over the country. I never did business in any other town, but have done business with men representing houses all over the country. The usage or custom is, the traveling men have the right to make contracts giving the jobbers exclusive right to certain territory. They all do it. *Cross-Examination.* If they did not give the exclusive right, the jobbers would not take hold of it; they would not do it under any circumstances." We then have the case of an agent engaged in introducing a brand of cigars in the West, and dealing with a local jobbing house in the discharge of his duties. Under such circumstances, what authority had the defendant a right to presume the agent possessed? The power and authority usually exercised in like cases. While the

point is not so ruled, it is recognized in *Strickland v. Insurance Co.*, 66 Iowa, 466, and is supported by *City of Davenport v. Insurance Co.*, 17 Iowa, 276. In 1 Wait on Actions and Defense, 221, the rule is stated as follows : "In determining what authority has been given, it may, as a general rule, be assumed that the principal intended to give, and that the authority conferred includes and carries with it, the power to employ all the usual and necessary means of executing it in such manner as to accomplish the objects which the principal had in view in creating the agency." The author cites abundant authorities for its support, and we think the rule is nowhere questioned on authority. With this rule to guide, there should be no question but that, with the testimony of Meyer, the question as to the authority of the agent was one for the jury. If his testimony is true, other agents in like business generally possessed the authority claimed to have been exercised by Katz, and the authority exercised was a necessary means to accomplish the purpose of his agency.

In defense of the ruling on the motion, it is urged that the contract under which the damage is claimed is too indefinite and uncertain, and among the reasons specified are these : "There is no agreement on the part of defendants to work up the trade, nor to put men into the field to canvass." The evidence does not, in terms, state such an agreement, but it does show that defendant bought cigars for sale in that territory, and that defendant was to have the goods for sale as long as it "pushed them." This is surely evidence of the fact of such an agreement. Whether sufficient or not was a question for the jury, and the testimony very plainly shows that men were making the canvass, and that expenses were incurred in so doing.

3. CONTRACT: mutuality: evidence.

The point is made that, if there was such a contract, plaintiffs were only required to furnish cigars to fill orders taken by the defendant; but no such agreement is alleged or attempted to be proved. The disclosures by the record

4. ——: to furnish goods for sale: interpretation.

as to the contract in that respect are that the cigars were to be furnished as ordered by defendant, and the shipments made purport to have been made in pursuance of such orders. The orders spoken of are the orders of defendant.

It is also said that plaintiffs had the right to terminate the contract at any time, and that they did so by refusing to furnish more cigars. The record does not sustain the claim. The averments of the petition are, and also the proofs, that the cigars were to be furnished as long as defendant wanted or ordered and had sale for them. In this respect the contract is not so indefinite as to be void.

5. ——: ——: right to terminate.

In defense of the motion to strike, it is also urged that the contract is within the statute of frauds, and the proofs offered are not competent, not being in writing. The Code on that subject, referring to contracts to be evidenced in writing, is (section 3664): "Such contracts embrace (1) those in relation to the sale of personal property, when no part of the property is delivered, and no part of the price is paid." For the purpose of this question we must consider that the contract was made, as it turns upon the query, if any part of the property was delivered, or any part of the price paid. Conceding, for argument, that the contract was made, we then have the undisputed facts that two lots of cigars were ordered and delivered,—the lots being ten thousand cigars each,—and one lot was paid for. We think this clearly a part performance of the contract. The contract was to deliver or furnish cigars to establish and supply the trade in a certain section. A part of the goods was furnished and applied to the purpose, and a part paid for. The spirit of the law as to the exceptions in proving such contracts would be violated to hold that each lot was a separate transaction or contract. If the contract was made, the plaintiffs had no discretion as to supplying the orders if the trade continued. Each order was not a new contract, but in

6. ——: ——: statute of frauds.

fulfillment of the old one. With these rulings the testimony of Farley and Meyer certainly presented a question for the jury as to whether there was a contract, and a breach thereof ; and, if so, it was error to strike out the testimony tending to show the damage.

III. Again, it is said that the contract is too indefinite to be valid, because of the uncertainty as to territory embraced in its terms. The point does not receive elaboration in argument, and we doubt if much reliance is placed upon it. The contract, as alleged, is : "Dubuque, and the territory tributary thereto." There is certainly a section of country tributary to Dubuque for the purpose of such a trade, and it is certainly a matter not insusceptible of proof ; and, again, the parties, by their contract, seem to have eliminated much of the difficulty anticipated, for it appears in the testimony above quoted that there was an agreement that the plaintiffs should not sell nearer than Omaha, on the west, St. Louis, on the south, Chicago, on the east, and St. Paul, on the north. While, perhaps, with this and other testimony, it would be very difficult, if not impossible, to establish definite lines as bounding the territory intended, the regulations of trade, and the experience of tradesmen, would enable the court to so find the fact as to meet the intent of all parties, and enforce the contract with reasonable certainty. If A. should employ B. as a traveling salesman in Dubuque, and the territory tributary thereto, we do not think it would be held that either could avoid the contract merely because of indefiniteness as to the territory. The law assumes that the parties contracted understandingly upon the question, and the court will not dismiss them without inquiry as to the fact, where its ascertainment is a matter of reasonable certainty. The case should not be confounded with the rule as to contracts being disregarded because of indefiniteness arising from the terms or language used in the contract, where the intent of the parties cannot be understood.

7. ——: ——: exclusive territory: definiteness.

IV.   Errors are assigned as to the rulings on the introduction of testimony.   Several questions were asked

**8. EVIDENCE: order of: discretion of court.**

Mr. Farley bearing on the question of damage, and from appellees' argument we infer that the rulings excluding the testimony were based on the order of proofs, as to which the court has a discretion; and, as the rule as to the proper measure of damage is not before us, we think it unnecessary to consider the assignments.

V.   The verdict in the case was returned on the fourteenth of November, and the motion for a new trial was not filed until the eighteenth, which

**9. APPEAL: consideration of errors: motion for new trial filed too late.**

was afterwards overruled, and it is urged that no error can be based thereon because not filed within the time provided by law. The position is likely correct as to errors based on the motion, but exceptions were taken, and errors assigned, independent of the motion for a new trial, and with such a record this court may review and reverse the action of the court below.   Code, sec. 3169; *Drefahl v. Tuttle*, 42 Iowa, 177; *Brown v. Rose*, 55 Iowa, 734. Other cases are to the same effect.

The foregoing disposes of the necessary questions, and the judgment is                         REVERSED.