WILLIAM H. RULE v. JOHN McGREGOR, Appellant.

117   419
120   586
120   588
117   419
136   680

**Contract to Board:** *Agreed price continues until notice of change.* Where one begins to board with another at an agreed price per week, and he is not notified of any change, the price continues unchanged.

**Contracts:** TO FURNISH FARM IMPLEMENTS: BREACH: *Damages.* Where plaintiff undertakes to manage defendant's farm for half the profits,—defendant to furnish the implements,—and defendant fails to do so, he should be charged with half the use of those supplied by plaintiff in excess of his share.

**Contract to Manage Farm:** *Includes procuring seed.* Where plaintiff undertakes to manage defendant's farm for half the profits, management includes the procurement of seed.

FAILURE TO REPAIR WELL: *Waiver of damages.* Where plaintiff undertook to manage defendant's farm for half the profits, and defendant promised to repair a certain well, but did not do so, and thereby plaintiff was obliged to carry water some distance,

but it appeared defendant offered to repair it, and plaintiff said that, being indebted to defendant, he was willing to carry the water until he had the means to pay him, and defendant never refused to repair, plaintiff could not recover for such labor.

FAILURE TO FURNISH STEERS: *Damages*. Where defendant agreed to furnish a certain number of steers, to be cared for by plaintiff, and kept for sale at a profit,—the profits to be divided,—and defendant failed to furnish the steers, damages for the breach were not too remote and speculative for allowance.

*Same*. Where defendant agreed to furnish a certain number of steers, to be cared for by plaintiff, and kept for sale at a profit, —the profits to be divided, and plaintiff to pay the interest on the sum invested in the steers,—and defendant failed to furnish the steers, in determining plaintiff's damages there should be deducted from the probable profits the interest to be paid defendant and out of plaintiff's share of the profits the probable expense plaintiff would have incurred for extra help in caring for the cattle', and whatever amount he received for his labor which he would not have earned had he fed the cattle.

*Appeal from Crawford District Court.*—HON. S. M. EL-WOOD, Judge.

TUESDAY, JUNE 3, 1902.

THE plaintiff first sued defendant for an accounting of partnership transaction in the operation of the latter's farm, and afterwards began an action at law for the recovery of items independent of such partnership. Issues were joined, and in the law action defendant, by way of counter claim, demanded judgment for the amount due on three notes. By agreement the suits were consolidated, and trial had as in equity. From judgment in plaintiff's favor, defendant appeals.—*Reversed*.

*Russell & Tolliver* and *E. B. Wilson* for appellant.

*J. P. Connor* for appellee.

LADD, C. J.—The plaintiff moved on defendant's farm, of 240 acres, March 2, 1897, and continued there one year.

This was under an oral agreement that the profits should be equally divided; the plaintiff to furnish necessary means, to be returned to him from the common property, with interest at the rate of 8 per cent. per annum, and the plaintiff to manage the farm. Whether plaintiff was to do all the farm work, or merely furnish the labor of his two sons is in dispute; but we are inclined to take the latter view, and he should be allowed in the accounting the amount paid for extra help. The defendant was to furnish half the farm implements, but failed to do so, and should be charged $25 for half the use of that supplied by plaintiff in excess of his share. Fairly included in the management of the farm would be the procurement of seed, and plaintiff's-charge for obtaining corn to plant cannot be allowed. Undoubtedly the defendant agreed to have the wells (one at the house, and the other at the barn) repaired, and failed to do so. It seems the curbing was decayed, and the earth partially caved in. As a result, plaintiff was compelled to get water for his stock and for house purposes at a well in the slough, some 15 rods from the house, and 10 rods from the barn. The defendant testified that, when he proposed to repair the one near the house, plaintiff said that, as he could not raise the money owing McGregor, he was perfectly willing to fetch the water till such time as he could get the money. This is denied by plaintiff, who testified to having ascertained the price of brick for the wells at defendant's request, and that the latter promised to haul them as soon as the weather would permit. It is not claimed that defendant ever refused to repair the wells, or that plaintiff complained, or ever demanded that this should be done. Indeed, Rule made use of the slough well without objection, though McGregor was continually accessible. All the circumstances corroborate defendant, and nothing should be allowed plaintiff on his claim for carrying water. As to whether recovery of damages could have

been had in any event, see *Ladner v. Balsley*, 103 Iowa, 674; *Myers v. Burns*, 35 N. Y. 269.

II. The plaintiff contended that defendant, as a part of the agreement to lease, promised to furnish 105 steers about March 1, 1897, to be fed on the farm, and the money to purchase the feed, and that on the amount of money so expended he was to receive interest at the rate of 8 per cent. per annum, and that the profits above this were to be equally divided. The district court's finding that it was so agreed is sustained by the evidence. The purchase of a second lot was contingent on the outcome of the first being satisfactory, and hence dependent on a future understanding of the parties, which was never had. As there was no contract with respect to the second lot, there could have been no breach. The cattle were to be bought and fed five or six months for profit. The defendant failed to furnish them, and now insists that the damages flowing from the breach of contract are too remote and speculative for allowance. The object was the profits to be derived, and the mere fact that these might prove difficult of ascertainment ought not to defeat recovery. . Uncertainty as to the amount of damages is not an obstacle in the way of their allowance. Uncertainty as to the cause from which they proceed is what has occasioned trouble, and only when it cannot be ascertained with reasonable certainty that these have sprung from the breach alleged are they to be rejected as too remote or conjectural and speculative. This distinction is noticed in *Trigg v. Clay*, 88 Va. 330 (13 S. E. Rep. 434, 29 Am. St. Rep. 723): "It is sometimes said that the profits that would have been derived from performance cannot be recovered, but this is only true of such as are contingent upon some other operation. Profits which certainly would have been realized but for defendant's fault are recoverable. It is not an uncertainty as to the value of the benefit or gain to be derived from performance, but an uncertainty or contingency.

whether such gain or benefit can be derived at all. It is
sometimes said that speculative damages cannot be recov-
ered, because the amount is uncertain, but such remarks
will generally be found applicable to such damages as it is
uncertain whether sustained at all from the breach.
Sometimes the claim is rejected as being too remote. This
is another mode of saying that it is uncertain whether such
damages resulted necessarily and immediately from the
breach complained of. The general rule is that all dam-
ages resulting necessarily and immediately and directly
from the breach are recoverable, and not those that are
contingent and uncertain." *Schrandt v. Young*, (— Neb.
—), 89 N. W. Rep. 607, is a case precisely in point. There
Schrandt agreed to furnish 529 ewes to Young, to be kept
for him three years, to make good losses, and have one-half
of the wool clip and one-half the increase. Schrandt failed
to furnish the sheep, and damages based on the probable
increase of the flock and the wool clip were held not open
to the objection of being speculative and conjectural. In
*Hirschhorn v. Bradley*, 117 Iowa, 130, the cases in this state
and of others are reviewed, and the conclusion reached that
prospective profits of an agency terminated in the violation
of the contract creating it may be recovered by way of
damages. See, also, *Taft v. Tiede*, 55 Iowa, 370; *Gibson
v. Fischer*, 68 Iowa, 29. In *Shoemaker v. Acker*, 116 Cal.
239 (48 Pac. Rep. 62), the parties had entered into an
agreement by which the defendant purchased 110 acres of
unimproved land for a fruit ranch, and was to furnish the
means to plant trees and operate it. The plaintiff was to
devote his entire time to the enterprise, and receive one-
half of the profits in the increased value of the land and
the fruit sold. The period of the contract was to be five
years, but at the end of 13½ months, and after 70 acres had
been planted to lemons, the defendant violated the agree-
ment, and, at his request, plaintiff left the ranch. The
probable profits of his share in the enterprise were awarded

the plaintiff, the court saying: "An examination of the authorities will show that the cases in which future profits were rejected as speculative or 'too remote' were cases where the asserted future profits were entirely collateral to the subject-matter of the contract, and not a consequence flowing in a direct line from the breach of such contract. Familiar instances of such profits which are thus speculative and remote are those which might have been realized on a new contract with a third person, which could have been consummated with the proceeds of the contract sued on if the latter had not been broken, for in such a case the profits on the new contract are wholly collateral to the one broken, do not directly flow from it, and are not stipulated for or contemplated by the parties to the contract sued on. But where the prospective profits are the natural and direct consequences of the breach of the contract they may be recovered, and he who breaks the contract cannot wholly escape on account of the difficulty, which his own wrong has produced, of devising a perfect measure of damages." Here the particular object to be attained was the profit to be derived from buying, feeding, and selling the cattle. The profits anticipated were the direct and immediate fruits sought in entering into the agreement, and were its principal element. Their loss being the direct result of the breach, they should be allowed by way of damages.

III. Such damages are exceedingly difficult to estimate. Though figures may not lie, nearly every one has experienced disappointment in finding the actual profits of an enterprise considerable less than his penciled forecast, and often an apparently propitious undertaking, because of an unforeseen contingency, may result in financial loss. The kind of steers was not agreed upon, but we think it should be assumed that they had in mind such as were ordinarily purchased for feeding purposes in the community. The weight might vary from 700 to 1,300 pounds.

The amount of corn each would consume would depend somewhat on the size. One-half bushel per day seems to be the usual feed, and the price of corn is shown to have been 10 cents a bushel. It is proven that the profits on the hogs which follow cattle will pay for the coarse feed, such as hay and straw. Growth would depend much on the care given them. The increase in weight of a steer on full feed is variously estimated at from 40 to 100 pounds a month. Cattle suitable for feeding purposes could have been bought in the spring at from $4 to $4.25 per 100 pounds, and, after being fed five or six months, would have brought from $4.50 to $4.75. Assuming all of them to have continued thrifty, free from disease, and without accident, and the hogs to have escaped cholera, it requires little computation to prove the profits such that every farmer might well regret not having engaged in a similar enterprise. But the contingencies of loss from disease, overfeeding, accident, defect in the animals purchased, want of perfect care, and the like, cannot be ignored. The damages to be allowed are those not of theoretical calculation, but of actual experience. Thus defendant furnished 51 Texas steers December 7, 1897, which plaintiff fed till March 3d, following,—nearly three months. Estimating the corn feed at 10 cents a bushel, there was no profit after paying interest. But corn was then worth from 16 to 21 cents a bushel, and the transaction must have resulted in loss. Out of the probable profits should be deducted the interest to be paid defendant, and out of plaintiff's share of these the probable expense he would have incurred for extra help in caring for the cattle, and whatever amount he received for his labor, which he would not have earned had he fed them. We are satisfied from an examination of the whole record that $300 will amply compensate him for the damages resulting from defendant's breach of contract in failing to furnish steers.

IV. In 1895, and the three years following, plaintiff collected numerous notes for the defendant, and made use of the money, under an agreement to pay interest at the rate of 8 per cent. per annum. Though plaintiff kept an accurate account of these and other transactions, no charge for his services is to be found in his books. The contention of defendant that the money was to be loaned as stated was to compensate for the trouble of collecting is sustained. The defendant began boarding with plaintiff at the agreed price of $2 per week, and for this amount he was debited on the plaintiff's books. Until notified more would be exacted, McGregor had the right to assume the price would continue unchanged. This included a room in which to sleep, and but $2 per week for board and room should be allowed plaintiff after his removal to the defendant's farm. The defendant was afflicted with rheumatism for eight weeks, three of which he was bedfast. He did not require constant attention, and 75 cents per day is ample renumeration for the care bestowed on him. The plaintiff should be allowed $15 on the sale of a bull calf, as the evidence shows he was to receive all it brought in excess of $25. The other items enumerated in the petition at law should be allowed plaintiff. The sum of 95 cents should be credited defendant, and also the amount due on the three notes, less a credit of $430.28 received for plaintiffs share of the hogs sold, as of March 1, 1898. We have passed on all the disputed issues, and remand the case to the district court for computation and judgment in accordance with the conclusions stated. The parties, being familiar with the accounts, will experience little difficulty in striking a balance, which will be found to be in defendants favor.

REVERSED and remanded.