E. O. SARGENT, Appellee, v. FRANK CRAM & SONS, Appellants.

DAMAGES: Loss of Profits. Loss of profits is recoverable as damages
1   for the breach of a contract when such profits are *capable* of being
    made reasonably certain, and *are* so made certain by proper evi-
    dence. So held in an action for damages consequent on the breach
    of a contract to haul gravel, wherein plaintiff rendered his damages
    reasonably certain by evidence (1) of the number of loads which
    he could haul per day, and (2) of the ordinary and probable ex-
    pense to which he would be put in the making of such haul.

DAMAGES: Reduction of Loss—Duty to Prevent Loss. A party whose
2   performance of a contract to haul sand and gravel for a specified
    time has been prevented by the breach of contract of the other
    party, does not, by selling, after the breach, the equipment with
    which he was able to carry out the contract, *necessarily* limit his
    recovery to the damages which he has suffered up to the time of
    such sale.

*Appeal from Polk District Court.*—F. D. LETTS, Judge.

MARCH 14, 1922.

REHEARING DENIED SEPTEMBER 23, 1922.

ACTION for damages to the amount of $3,000 for breach of
a contract. There was a general denial by the defendant, and
a counterclaim for damages for $4,000 for alleged breach of the
same contract by the plaintiff. There was a trial to a jury,
and a verdict for the plaintiff for $1,000. Judgment was entered
thereon, and the defendants appeal.—*Affirmed.*

*Clark, Byers & Hutchinson,* for appellants.

*H. S. Thomas,* for appellee.

EVANS, J.—The contract in suit was as follows:
"This agreement made and entered into this 11th day of
April, 1918, at Des Moines, Iowa, by and between Frank Cram

& Sons of Des Moines, Iowa, and E. O. Sargent of Des Moines, Iowa, hereafter designated as the party of the second part; whereas the party of the second party agrees to haul sand and gravel for the party of the first part at the rates given below:

| Hauls of 1 mile or less | | | | $.40 per yd. of 3000# |
| " " 2 miles | | | | .55 " " " " |
| " " 3 " | | | | .70 " " " " |
| " " 4 " | | | | .85 " " " " |
| " " 5 " | for sand | | | .90 " " " " |
| " " 5 " | for gravel | | | 1.00 " " " " |

over the even mile to be classed as the nearest quarter mile and for each quarter mile over the even mile to be rated at an additional four cents per yard up to the five-mile haul when each quarter mile will be rated at five cents per yard above the five-mile rate.

"The party of the first part agrees to make payments for hauling each week to the party of the second part at above rates.

"The party of the second part does hereby agree to haul one thousand yards of sand or gravel each month for six consecutive months or more beginning with May 1, 1918, and the party of the first part agrees to supply at least one thousand yards each month for the time mentioned above.

"The party of the first part further agrees to have six hundred yards of the one thousand yards of sand or gravel in the four or five-mile hauls or a ton mileage equal to above amount.

"The party of the first part further agrees to keep the private road from the sand and gravel bins to the main public road in condition for heavy hauling and also agrees to arrange that all sand and gravel will not have to be handled by hand.

"It is further agreed by both parties hereto that the hauling of the sand and gravel to the new Savery Hotel job or the storage pile for same shall not be over the five-mile rate nor less than five-mile rate."

At the time this contract was entered into, the plaintiff was the owner of a Denby 2-ton truck, and was negotiating for the purchase of another truck, known in the record as the Masters 6-ton truck, which purchase was later completed. These

two trucks constituted the plaintiff's equipment for carrying out the contract entered into.

. It appears that there was a section of private road extending from the public highway to the defendant's sand bins. The condition of this road furnishes the nub of the controversy. The defendant undertook by the contract to keep this section of road "in condition for heavy hauling." This road was located on the river flats, and was peculiarly susceptible to weather conditions. The plaintiff made a start about May 15th upon the performance of his contract, and presented himself with both trucks at the sand bins for that purpose. His large truck, after being loaded, mired down upon the road in question, and had to be unloaded. A day or two later, a further attempt was made, with practically the same result. The evidence is sufficient to show that the road was not in a suitable condition to carry a 6-ton load; and that it was not put in such condition, if at all, for a considerable period of time. Overflows of the river followed a short time later, which naturally deferred all efforts at putting the road in condition. After the two attempts here noted, and before any substantial repair of the road had been made by the defendant, the plaintiff declared a breach of the contract, and abandoned it. He sues for the breach, and claims as his measure of damages the profit which he would have made upon the contract if he had been permitted to perform it.

Quite a volume of evidence has been devoted to the suitability of the large truck for use in the performance of the contract. Because it was large, it was to some degree unwieldy. It was a so-called semitrailer truck: that is to say, a two-wheeled trailer was attached to the main chassis of the truck, and the load was distributed over the wheels of the trailer and over the rear wheels of the truck proper. Because of the two pivots which were rendered necessary by such a combination, the truck was unwieldy for the purpose of backing into position at the bins. It is contended also that a 6-ton weight was beyond the contemplation of the defendant in entering into the contract, because trucks of such weight-carrying power were not in general use. We have no occasion to dwell upon the details of this feature of the controversy. The evidence for the plaintiff was sufficient to show that the defendant knew of his negotiations

for this truck at the time the contract was entered into, and that he signed the plaintiff's note given for such truck at the time of its completed purchase. The very language of the contract, with its reference to "heavy hauling," is corroborative of plaintiff's testimony in that regard. Sand hauling *is* heavy hauling in its very nature, even with a 2-ton truck or less. There was no occasion for the quoted expression in the contract unless something beyond the ordinary was in contemplation. Under the instructions, the finding by the jury in favor of plaintiff was a finding that the contract was entered into with a view to the use of this truck upon such road. Twenty-two grounds of error are assigned by appellant. Though we give consideration to all of them, we shall confine our discussion to those which are emphasized in the argument.

I. One of the principal points urged is that the damages claimed are remote, speculative, and uncertain, and are for that reason not recoverable. The general nature and scope of the evidence of the plaintiff on the question of damages consisted of proof of the number of loads which he could haul per day, with reference to the various distances and the ordinary and probable expense to which he would be put in the making of such haul. Manifestly, whatever haul he could be reasonably expected to make, built up the credit side of his account. The debit side was made up of the expense of power, lubrication, driver, wear, tear, depreciation, and repair. Was this kind of evidence so indefinite and uncertain as to forbid its acceptance as proof of damages? The defendant is subject here to the argument *ad hominem*. In the course of the trial, he disclosed his conception of a proper method of proof of damages, in support of his counterclaim for alleged breach of the same contract. He put on an expert witness of much experience, by whom he proved that the reasonable cost of performing such contract by the plaintiff would have amounted to 13 1/3 cents per ton per mile more than the contract price, whereby a profit of just that amount would have inured to the benefit of the defendant, and a corresponding loss would have resulted to the plaintiff. In arriving at such a result, his cross-examination shows that the expert took account of substantially the same data as were resorted to by the plaintiff in proof of

1. DAMAGES: loss of profits.

his damages. The difference between the respective computations was that, whereas Snoddy, the defendant's expert, estimated that the plaintiff could make only 7 or 8 of the 4-mile hauls per day, the plaintiff and his witnesses estimated that he could make 10 of them. The debit side was larger under the estimates of Snoddy than under the estimates of plaintiff's witnesses.

As an abstract legal proposition, loss of profits does afford a proper basis for the measure of damages for breach of contract, provided that the profits claimed are not remote, and are of such a nature as are capable of proof by reasonably certain evidence, and provided further that the evidence given in proof thereof *is* reasonably definite and certain. *Hichhorn, M. & Co. v. Bradley,* 117 Iowa 130; *Rule v. McGregor,* 117 Iowa 422; *Gibson v. Fischer,* 68 Iowa 29; *Taft v. Tiede & Co.,* 55 Iowa 370; *Huntington v. Haish Co.,* 190 Iowa 1197.

The authorities relied on by the appellant (*Morgan v. Sutlive Bros.,* 148 Iowa 318; *Howard v. Brown,* 168 Iowa 410; *Howe Mach. Co. v. Bryson,* 44 Iowa 159; *Winne v. Kelley,* 34 Iowa 339) were all cases where the profits were remote, or were of such a nature as to be incapable of reasonably certain proof, or where the evidence actually offered failed to measure to that standard. All unliquidated damages are, in a sense and to a degree, uncertain and indefinite. They are subject to much exaggeration in the estimates of witnesses, and likewise subject to be unduly minimized by contrary witnesses. But the jury is deemed to be capable of weighing exaggerations and of ascertaining the approximate damage, provided that the data before them upon which the damages are predicated are sufficiently definite and certain to shut out the field of mere conjecture and speculation.

In *Morgan v. Sutlive Bros.,* 148 Iowa 318, 330, 331, cited by the appellant, the rule as to loss of profits is stated as follows:

"The rule as to loss of profits is that they are not to be rejected as being necessarily uncertain and speculative, but, when they are in fact uncertain and speculative in a given case, they cannot be considered, because incapable of adequate proof. This question is quite fully discussed in *Hichhorn v. Bradley,* 117 Iowa 130. See, also, *Howe v. Bryson,* 44 Iowa 159; *Winne v. Kelley,* 34 Iowa 339; *Bank v. Thurman,* 69 Iowa 693; *Manufacturing Co. v. Creamery,* 120 Iowa 584; *Wakeman v. Wheeler,*

101 N. Y. 205 (4 N. E. 264, 54 Am. Rep. 676) ; *Central Coal Co. v. Hartman*, 111 Fed. 96 (49 C. C. A. 244) ; *United States v. Behan*, 110 U. S. 338 (4 Sup. Ct. 81, 28 L. Ed. 168). We are clearly of the opinion that the alleged profits claimed in this case were not shown by any proper proof. The opinion of the defendant was the merest guess, without any data to support it. The profits claimed by him, both by his pleading and by his evidence, are so enormous and exaggerated as to be clearly speculative, and beyond the ordinary contemplation of any contracting party.''

In the case above cited, the damages were predicated upon the failure to furnish certain rubber spools. The only measure of damage claimed was the expected profits to be realized upon a resale of the spools after further labor had been expended upon them. The proposed resale would be an enterprise separate and distinct from the contract of the manufacturer to furnish them, and would involve the consideration of many uncertain elements and contingencies wholly outside of the terms of the contract alleged to have been breached ; whereas, in the case before us, the data relied upon by the plaintiff are sufficiently definite to enable an approximate estimate as to each one, and from such estimate the amount of the damages could be ascertained by the very terms of the contract itself. Our conclusion is that this assignment of error is not well taken.

II. A further point which is emphasized in appellant's argument is that, within a few days after the alleged breach of the contract, the plaintiff wholly disabled himself from performing it, by selling his truck. The general argument is that, whatever right he may have had to damages accrued to him *prior* to such sale of the truck, he had no right to any alleged damages accruing *thereafter*.

2. DAMAGES: reduction of loss: duty to prevent loss.

It does appear from the evidence that, after the plaintiff had declared a breach by the defendant, he abandoned further attempts to use the road, and in that sense abandoned the contract, and very soon thereafter sold his truck. If there was a breach of the contract by the defendant in the respect claimed by plaintiff, it was of such a nature as to prevent or greatly retard the plaintiff from carrying out his own contract. He had

a right, therefore, to elect to claim damages. Having so elected, he was bound also to some reasonable and consistent course, in an effort to minimize his damages, and to that extent to protect the defendant. It is true that he might have held himself in readiness from day to day, and might have made daily tender of performance upon his own part and daily demand of performance upon the part of the defendant. This might have resulted in an early repair of the road, so that the plaintiff could have greatly mitigated the accruing damages by taking up the work thereafter. On the other hand, it might have resulted in a mere waste of time. He was not bound to pursue this or any other specific course. He was bound to make reasonable efforts to obtain further similar employment, by way of protecting himself from loss. He did engage himself to haul sand and gravel for another contractor. Whether what he did was a reasonable course on his part was a question for the jury. Moreover, whether such course was reasonable or unreasonable, the measure of mitigation due the defendant was the same in either event. The plaintiff was chargeable in reduction of damages for any amount which, in the exercise of ordinary diligence, he "could have earned" during the period covered by the contract. The trial court so instructed. And this answers the point pressed by the appellant that plaintiff's right to alleged damages accruing *after* he had sold his truck was something less than his rights accruing *before* he had sold his truck. His damage, if any, was not, in that sense, divisible. When his right of action for damages accrued, it accrued as to all his damages. Whether his right to all damages had fully matured before the expiration of the time for performing the contract is a different question, and is not involved herein.

The argument for appellant that, "in order to recover for the profits as damages, plaintiff must show that he was, at all times during the life of the contract, able, ready, and willing to carry out the contract," is not applicable to a damage case. If the plaintiff were suing for *specific performance,* this argument would be apropos. The further argument for appellant that, after the plaintiff had disabled himself from further performance of the contract, he could claim only the value of the services rendered prior thereto, or perhaps the damages accru-

ing prior thereto, is also inapplicable in a damage case.   If the plaintiff had *rescinded* the contract, he would then be entitled only to establish the *status quo*, and this would include compensation for the services actually rendered as upon a *quantum meruit*, prior to the rescission.   Such was the case of *United States v. Behan*, 110 U. S. 338.

III.   The foregoing disposes of the principal questions discussed by appellant in argument.   Several requested instructions were presented by the appellant in the court below.   Except as to the questions which we have here discussed, the substance of such requested instructions was included in those given by the court.   Some other minor errors are assigned, most of which pertain to items of evidence.   We find none of them well taken.   The judgment below is, accordingly,—*Affirmed*.

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.