ATLAS BREWING COMPANY, Appellant, v. W. F. HUFFMAN, Appellee.

No. 41983.

1218

January 16, 1934.

Rehearing Denied May 19, 1934.

John C. Shipley and Senneff, Bliss & Senneff, for appellant.

L. R. Boomhower and N. Levinson, for appellee.

Anderson, J.—The plaintiff-appellant is a corporation with its principal place of business in Chicago, Ill., and its business is that of conducting a brewery and merchandising its products. The defendant-appellee is a resident of Mason City, Cerro Gordo county, Iowa. In October, 1929, and for a considerable time prior thereto, the defendant was engaged in the sale and distribution of Falstaff brew in the territory surrounding Mason City, Iowa. The latter part of October, 1929, he was solicited by a Mr. S. J. Warring, who was district manager of the Atlas Brewing Company in the state of Iowa.

to accept an agency contract with the plaintiff-appellant. The first negotiations along this line occurred in the defendant's office in Mason City. Later in the same month, and at the solicitation of the agent, Warring, the defendant went to Chicago and called at the general offices of the plaintiff company, where he met the president and the general sales manager, a Mr. Richard Dieck. An oral agreement was there entered into by Mr. Warring, the Iowa district manager, in behalf of the company, and the defendant, W. F. Huffman. There is some controversy as to the terms of this contract, but the defendant testifies, and his testimony is supported by other testimony in the record, that he was to have an exclusive agency for the sale and distribution of the plaintiff's products in fifteen counties in Iowa, in the territory including Cerro Gordo county. The plaintiff's testimony limits the exclusive territory to eight counties. There is no dispute in the record as to the consideration for the contract. The defendant was given the right to purchase plaintiff's product at $2.05 per case with a rebate of $1 for each empty case returned. He was to sell the product at $1.95 per case. He was also to receive $.05 per case commission on each case of appellant's product sold in the territory covered by his agency, and outside his exclusive territory by any subagent. At the time this contract was entered into appellant did not have any agents or distributors of its products in the territory involved. The plaintiff claims that it was a part of the agreement that the defendant was to appoint subagents in all counties outside of those in which he had the exclusive agency. The defendant purchased a carload of beer of the plaintiff, one-half of which was delivered to him at Mason City and the other one-half to a subagent appointed by him at Fort Dodge, Iowa. The appellee's testimony tends to prove that he immediately commenced work on the introduction and sale of appellant's product in the territory included in his contract; that he made trips to most of the larger towns in the territory, calling upon many people for the purpose of inducing them to become subagents for the sale of plaintiff's product in different places; that he advertised the product on menu cards in restaurants, and distributed much of the product free in order to create a demand and promote the sale of the product; that he purchased a special truck and employed two special men to assist him in this work. On January 6, 1930, the appellee bought a second carload of beer from the appellant. The agent, Warring, called upon the appellee at his place of business early in January, 1930,

1220

and he (Warring) testified that, on this occasion, he gave the appellee until April 1, 1930, in which to perform his contract. The appellee testifies that there was nothing said at that time, or at any other time, as to the date he was to perform his contract, and that nothing was said at that time, or at any other, about revoking the contract, or taking the territory or any part of it away from him. Warring also testified that the appellee had not paid for the first carload of beer in full; and that he had not used his best efforts in promoting the interests of the company in the territory. Mr. Dieck, who was the general sales manager of the appellant, testified that the second carload of beer was shipped to Mr. Huffman about January 7, 1930, on open account, and that the first carload had been paid for in full at that time. The testimony further shows without dispute that during the month of February, 1930, Mr. Warring, the Iowa agent of the appellant, called on the Melman Fruit Company at Marshalltown, Iowa, and gave them the right to sell appellant's product in three of the counties which were included in the appellee's exclusive territory; and that the said fruit company immediately commenced to sell the product of the appellant in those counties. The defendant discovered this situation in March, through his men, who were soliciting in the territory, and immediately protested by letter, to the appellant, on account of this violation of the terms of his contract, and when he protested orally to Mr. Warring, the Iowa agent, Warring informed him that the Melman Fruit Company was a big concern; that they could produce more than Huffman; and that they were going to take the agency away from him whether he liked it or not. At this time the appellee claims that he had received no complaint from appellant, or any notice of cancellation of his contract. There is no showing in the record that any notice of cancellation of the contract was ever given to the appellee other than the statement claimed to have been made by Mr. Warring on January 7, that he would give him (Huffman) until April 1 to perform. Appellee had appointed subagents in Humboldt and Webster counties, but did not receive any commission on the sales made by such subagents until March 24, 1930, and none thereafter. The appellee testifies that the cost to him in the sale and distribution of the Atlas products in his territory was $.40 per case, and that this would leave him a net profit of $.50 on each case sold by him direct, in addition to the $.05 per case commission of the product sold by subagents in the territory. About April 1, 1931, the defendant had sold and dis-

tributed all of the appellant's product that he had received, and asked them to ship another carload, which they refused to do, and about that time also gave to the Melman Fruit Company the Mason City territory; and that the fruit company sold between six and seven thousand cases of the appellant's product in the Mason City territory alone; that between November, 1929, and December 1, 1930, about three thousand cases of the appellant's product was sold by appellee's subagents, and appellee claims that he is entitled to a commission of $.05 per case upon the amount so sold by subagents, and also that he is entitled to $.50 per case upon the amount sold in the Mason City territory by the Melman Fruit Company.

The case was submitted to the jury upon the foregoing facts, and a verdict was returned for the appellee in the sum of $2,091.25. A motion for a new trial was overruled, and the brewing company appeals.

The action was commenced by the brewing company, as plaintiff, to recover on an account for a balance on the second carload of beer shipped to the defendant. The defendant admitted the correctness of the account, but alleged there was nothing due the plaintiff because of its violation and breach of his contract of agency, and filed a counterclaim to recover the amount claimed to be due him as damages for such breach and violation.

The existence of an agency contract between the parties is not in dispute. The appellant contends that, the contract not being for a definite period, they could cancel it at any time upon reasonable notice. It does not claim that any notice of cancellation was ever served upon the appellee other than the statement of Mr. Warring, its agent, on January 7, 1930, to the effect that appellee would be given until April 1 to perform. What would be a reasonable notice of cancellation of the contract in the instant case would depend upon the circumstances as well as the intention and contemplation of the parties at the time the contract was entered into. Hess v. Iowa Light, Heat & Power Co., 207 Iowa 820, 221 N. W. 194; Smith v. Cedar Falls & M. R. Co., 30 Iowa 244. But we do not think it is necessary for us to enter into a discussion as to the length of time that would be necessary to cancel the contract in question, as there is no evidence in the record that the contract was ever canceled. The contract provided, as claimed by appellee, that it was to continue as long as there would be a demand for the product, and as long as appellee desired to continue with the sale of the

same. And such contracts have been held valid in practically all jurisdictions, until, at least, a reasonable notice of cancellation is given. Hichhorn, Mack & Company v. Bradley, 117 Iowa 130, 90 N. W. 592; Kaufman Bros. & Company v. Farley Manufacturing, Company, 78 Iowa 679, 43 N. W. 612, 16 Am. St. Rep. 462; Huntington v. Jacob Haish Company, 190 Iowa 1197, 181 N. W. 480.

 The appellant urges, as one of the errors entitling it to reversal, that there was no competent evidence upon which the jury could compute damages, and that the evidence tending to prove damages was too remote and speculative to form a basis for liability or to warrant a recovery. The appellee contends that he was entitled to recover such profits or commissions as he would have earned had the contract been carried out, less the expenses incident to the performance of the contract on his part. The appellee never repudiated or refused to perform his contract. The contract was breached by the appellant by refusing to further furnish the appellee with its product, and by establishment of other agencies in the territory given exclusively to the appellee. Under this state of facts, we are constrained to hold that the appellee was entitled to recover damages which he was able to prove he had suffered by reason of the appellant's breach.

We had an almost parallel case before us in Hichhorn, Mack & Co. v. Bradley, 117 Iowa 130, 90 N. W. 592. In that case the agent had acquired the exclusive right to sell in certain territory a certain brand of cigars, and it was agreed that he should be furnished with such cigars as he should order, as long as he continued to render his best services in pushing the sale of the cigars. The contract was oral and was entered into in January, 1897; in July, 1898, the cigar company refused longer to furnish cigars to the agent. We said in that case that it was contemplated and understood by the parties contracting that the agent was to incur expenses introducing the cigar to the trade, and that he would incur such expenses. It was urged in that case that the agent failed to carry out his part of the agreement in rendering his best services in the promotion and introduction and sale of the cigars in question. In that case the exclusive territory given to the agent was given to another. The agent sought to recover the profits which he would have made had the contract not been breached or revoked by the cigar company. The contention in that case, as in this, was that the damages claimed were too remote and speculative upon which to

base a recovery. In that case evidence was admitted showing the number of cigars sold in the same territory by the jobber to whom the territory was given, after the contract with the defendant was breached. In that case, as in this, the agent limited his right to recover damages accruing up to the time of trial. In that case the jury was instructed that, if the agent was found to be entitled to recover damages under his claim, on arriving at the amount of damages, they should consider the evidence as to the sale of the product in the exclusive territory by others after the breach of the contract by the cigar company, and in connection also with all the evidence relating to the price at which the cigars were to have been furnished to the agent under the contract, and the price at which they were to be resold, and as to the cost to the agent who would have handled and sold such cigars in said territory, and from all such evidence determine how much, if any, said agent had been damaged by the breach of the contract. The court further instructed the jury that it should determine as nearly as possible the quantity of cigars the agent would have sold in the territory and the profits which would have accrued from such sales. In that case we approved the court's rulings in the admission of the testimony as to the damages, and approved the instructions of the court submitting the matter to the jury, and we there said:

"It is perfectly clear in this case that the profits to be derived from the sale of these cigars constituted the only consideration to the defendant [agent] for entering into the contract, and that the loss of such profits was in the contemplation of the parties at the time the contract was made as a direct consequence which would result from its breach. And it is well settled that when the loss of future profits is thus in the contemplation of the parties, and does directly result from the breach of the contract, the amount of profits thus lost may be recovered"—citing cases.

The whole subject that we here have under discussion was thoroughly analyzed in the opinion in the Hichhorn case, and practically all of the decisions of this court and from other jurisdictions are cited and referred to. In that case, action was brought upon an account by the plaintiff, and the defendant admitted the indebtedness, but interposed a counterclaim for damages by reason of the breach of the contract. A verdict was returned on the counterclaim.

We have the same situation in the instant case. We affirmed the verdict on the counterclaim in the Hichhorn case.

In Mueller v. Spring Company, 88 Mich. 390, 50 N. W. 319, 321, we have about the same state of facts as is here involved. In that case an agent had been given the exclusive right in a certain territory for the sale of a certain kind of mineral water, and he brought an action for breach of contract in wrongfully terminating his agency and giving it to another party. In that case the Michigan court used the following language:

"The measure of plaintiff's damages was the profits which Mueller might have realized if defendant had performed its contract. * * * While it may be true that Mueller would not have disposed of as much of the article as this firm did, yet the amount of their sales, while not conclusive upon defendant, was competent evidence to go to the jury upon the question of plaintiff's damages. * * * The sales for the season named may have been greater than for the previous season, because of a demand created by what Mueller did, rather than by any special effort by this firm. * * * Proof as to the amount actually sold by them for that five months cannot be said to be speculative."

Our own pronouncements in Kaufman Bros. & Co. v. Farley Manufacturing Co., 78 Iowa 679, 43 N. W. 612, 16 Am. St. Rep. 462, and Rosenberger v. Marsh, 108 Iowa 47, 78 N. W. 837, support the foregoing discussion, and there is nothing in any of the cases cited by appellant that supports a contrary doctrine. The court in the instant case followed the rules laid down in the foregoing cited cases and submitted the question as to the measure of damages to the jury under proper instructions. We conclude there is no merit in appellant's contention at this point.

In Kaufman Bros. & Co. v. Farley Manufacturing Company, 78 Iowa 679, 43 N. W. 612, 16 Am. St. Rep. 462, we again have a situation very similar to the one in the instant case. There the contract with the agent was for the sale of cigars in certain territory. The agent employed men to cover the territory and build up the trade for the cigars, and the principal was to ship the cigars when ordered, "for as long as the defendant desired to deal in the cigar, or so long as the trade continued." The contract continued for about three months, when the principal breached the same, refusing to furnish further cigars to the defendant. Verdict was directed against

the agent in a suit to recover damages for the reason that the contract lacked mutuality, and was too indefinite. This court reversed the lower court and held that the contract did not lack mutuality, and that it was definite enough to be enforced. And we there stated:

"It is also said that plaintiffs [principal] had the right to terminate the contract at any time, and that they did so by refusing to furnish more cigars. The record does not sustain the claim. The averments of the petition are, and also the proofs, that the cigars were to be furnished as long as defendant [agent] wanted or ordered and had sale for them. In this respect the contract is not so indefinite as to be void. * * * The evidence shows that defendant bought cigars for sale in that territory, and that defendant was to have the goods for sale as long as it 'pushed them.' This is surely evidence of the fact of such an agreement. Whether sufficient or not was a question for the jury, and the testimony very plainly shows that men were making the canvass, and that expenses were incurred in so doing."

We followed and reannounced the same rule as announced in the Kaufman case, in Rosenberger v. Marsh, 108 Iowa 47, 78 N. W. 837. See, also, Garlock v. Motz Tire & Rubber Company, 192 Mich. 665, 159 N. W. 344; Ehrenworth v. George F. Stuhmer & Co., 229 N. Y. 210, 128 N. E. 108, and cases cited in 52 A. L. R. 549.

In the case at bar the appellee proved the exact number of cases of beer sold in the territory (which was to be his exclusively) by the agency which succeeded him, and he also proved the number of carloads of beer sold through subagencies established by him. He also proved the costs and expenses and value of his own time in selling the product; and that his net profits would have been $.50 per case on the amount of the product sold in the exclusive territory, and a commission of $.05 per case on the amount of product sold outside of the exclusive territory by his subagents. These matters were all submitted to the jury under proper instructions, and no error can be based upon the introduction of such testimony or the manner of submitting the same to the jury.

The most the appellant can claim is that the contract was terminated by it on April 1, 1930. But the record is without dispute that prior to that date, and as early as February, 1930, the agency for a part of the appellee's territory was given to the Melman

Fruit Company, and thereby the appellant breached the contract prior to the time that it claims a revocation of the same; and further in March of the same year the balance of the exclusive territory was given to the Melman Fruit Company, and it established an agency and commenced the sale and distribution of the product in Mason City, the home and principal place of business of the appellee. Under the appellant's own testimony the appellee was not in default, and there was no reason existing for the cancellation of his contract. Mr. Dieck, the sales manager of appellant, testified that, when the second carload of beer was shipped to the appellee on January 7, 1930, the first carload had all been paid for in full. The reason given by appellant to the appellee for the invasion of his exclusive territory by the new agent was that the Melman Fruit Company was a larger concern and would sell more of the product than he (the appellee) could. It is well settled that a party who is in default of performance of a contract cannot rescind. The party seeking rescission or cancellation must be willing to perform his part of the contract. 13 C. J. 614.

It is our conclusion that the record in this case shows a willful violation and breach of the contract in question by the appellant, and that appellee was damaged thereby; that the questions as to the terms and extent of the contract, as to its cancellation or repudiation by the appellant, and as to the damages of appellee by reason thereof, were all submitted to the jury under proper instructions.

Appellant complains of several of the court's instructions and especially paragraphs 6 and 7 thereof. Paragraph 6 was as to the measure of damages, and, as to the complaint against this instruction, we have to say that it incorporated the appellant's requested instructions Nos. 1 and 2, and gave the correct rule for the consideration of the testimony as to the measure of damages, as laid down in the cases we have cited and discussed. The appellant's complaint, as against instruction 7, is that the court unduly emphasized the testimony of the witness Warring in referring to his statement that he admitted giving the defendant until April 1, 1930, to perform; and that the instruction is contradictory and misleading. We think there is no merit in appellant's contention at this point. We have read the instructions as a whole carefully and are constrained to hold that they correctly submitted the questions and issues involved to the jury.

Complaint is also made against certain remarks and rulings

of the court on the introduction of evidence. We have carefully examined all such complaints and find no prejudicial error.

The record impresses us with the fact that the case was very carefully and painstakingly tried by the learned trial court. His carefully prepared ruling on the motion for a new trial has been of noted assistance to this court in the study of this record. In his written opinion overruling appellant's motion for a new trial, and as sustaining the court's action in so doing, the following cases are cited which are pertinent to the issues we have discussed in the foregoing opinion. Rosenberger v. Marsh, 108 Iowa 47, 78 N. W. 837; Hichhorn v. Bradley, 117 Iowa 130, 90 N. W. 592; Cohn, Baer & Berman v. Bromberg, 185 Iowa 298, 170 N. W. 478; Huntington v. Jacob Haish Company, 190 Iowa 1197, 181 N. W. 480; Burghardt v. Scioto Sign Company, 191 Iowa 384, 179 N. W. 77; Sargent v. Frank Cram & Sons, 194 Iowa 152, 186 N. W. 916; Rule v. McGregor, 117 Iowa 419, 90 N. W. 811; Percival Company v. Sea, 207 Iowa 245, 222 N. W. 886.

A further and more specific discussion of the many complaints and contentions of the appellant would unduly extend this opinion and would serve no purpose. It is our final conclusion that no prejudicial errors are shown by the record to have occurred; that the verdict of the jury is supported by the evidence; and that there is no reason for disturbing such finding. An affirmance necessarily follows.—Affirmed.

CLAUSSEN, C. J., and KINDIG, MITCHELL, DONEGAN, KINTZINGER, and STEVENS, JJ., concur.