## The Blair Town Lot and Land Co. v. Walker.

1. **Statute of Frauds:** CONRACT TO BE PERFORMED WITHIN A YEAR: EVIDENCE. To exclude evidence not in writing to prove a contract, on the ground that it is not to be performed within a year from the making thereof, the contract must show, either by express terms or necessary implication, that its performance within the year is prohibited or impossible.

2. ———: PROMISE TO PAY THE DEBT OF ANOTHER. Where the promise to pay the debt or discharge the obligations of another arises out of a new and original consideration between the payer and the debtor, the case is not within the statute of frauds, and the contract is not required to be evidenced in writing and signed by the party to be charged.

*Appeal from Linn District Court.*

FRIDAY, SEPTEMBER 25.

THE plaintiff, an Iowa corporation, brought an action against the defendant on account. The defendant filed an answer, setting up his defense; and also filed a cross-claim, consisting of three counts. The plaintiff demurred to the cross-claim, and hereon arises the only question made in this appeal. The last count of the cross-claim contains substantially all the matters to which the demurrer is directed, and the points decided are sufficiently presented by the averments of the third count; and in order to abreviate as much as practicable, that count only is set out. The amount of the cross-claim upon the three counts is $189.140.00. The third count is as follows:

The defendant, W. W. Walker, by way of further, more specific and other cross-claim against the plaintiff, says, that heretofore, to-wit: on or about the 1st day of March, A. D. 1866, and long before the organization of the plaintiff, and after the organization of the Iowa Railroad Contracting Company—of which latter John I. Blair was the acting and chosen president— and while said Contracting Company was engaged in building a railroad known as the Cedar Rapids & Missouri River Railroad, from Cedar Rapids to the Missouri River, in

the State of Iowa, said John I. Blair for himself, and for himself only, entered into a contract with this defendant, whereby it was agreed by and between said John I. Blair and defendant that said Blair should furnish and advance, from his own funds, large or the necessary sums of money as the same might be needed, demanded or wanted, for the purpose of buying lands along the line of said proposed road, then in process of construction; and that this defendant should make the proper selections, and procure the possible donations, if any, and make the necessary purchases of lands in Iowa along the line of said road; expend the monies in payment therefor, and take the requisite conveyances of all such lands to said John I. Blair, or such person or trustee as he (Blair) might name or choose, and have the general management of said business; to lay off and plat such of said lands as might then be considered necessary for stations and town lots on said road, and sell said lots. That in payment and consideration for such services so rendered as aforesaid, said defendant should have: 1st. For all town lots so laid off and sold by him, or sold from said lots so laid off and platted by defendant, a reasonable compensation—in amount 10 per cent., to be withheld or paid to defendant out of said lots and their proceeds as fast as sold, and so long as sales of said lots continued, and until all were sold. 2d. Out of all lands not actually platted and laid off into town lots and railroad stations, said Blair, so fast as said lands were sold and realized from, was to have and withdraw first, the original purchase money of each or any tract so sold, together with interest on said money at the rate of 7 per cent. per annum, and any expenses attending said original purchase really advanced by said Blair, and any and all taxes, with interest really advanced by said Blair upon any such tract; that then said Walker (defendant) should have one-half of the net profit, or difference in the sale price of said tract or tracts of land, said amount to be so paid said defendant, and as fast as said lands were sold, and said defendant to be interested in said lands last aforesaid to that extent. That afterwards, upon the faith of said understanding, in strict pursuance thereof, said John I. Blair did advance to defendant

large sums of ready money for the purposes aforesaid, to-wit: in the sum of $94.920, and this defendant did then select, purchase and procure to be conveyed to said Blair and others named by him, for him, large and valuable tracts of land, in all 15,980.20 or more acres, along said railroad in the State of Iowa, and did pay therefor in the aggregate $94,920, the outside and entire cost thereof. That afterwards, in pursuance of said contract with said Blair, this defendant did devote to and lay off about 1,141.22 acres of said lands in station grounds for said railroad and town lots, leaving a residue of said lands in all 14,838.98 acres, from which defendant was entitled to one-half of the net profits as aforesaid. That all of said purchases and conveyances were perfected and made prior to June, A. D. 1871, and the titles to said lands were held by, or in trust for, and belonged to said John I. Blair, under said arrangement, until about July, 1871. That the plaintiff, "The Blair Town Lot & Land Company," was organized about the 20th day of June, A. D. 1871. That prior to the organization thereof, and long before any of the conveyances, hereinafter referred to, to plaintiff by said Blair were made, each and every of the stockholders of plaintiff, the members of plaintiff and every one interested therein, had full, due and complete notice of the arrangement and agreement aforesaid by and between said Blair and defendant. That at the time of the organization of said plaintiff, and at the time of the conveyances, hereinafter referred to, to plaintiff by Blair, said plaintiff was fully notified of said agreement and rights of defendant in said lands, and took conveyances subject thereto. And defendant says that afterwards, on or about the 25th day of July, 1871, said John I. Blair, at the request and solicitation of plaintiff that he convey his rights and interest in all said lands to plaintiff, and intending to convey said lands to plaintiff subject to the rights of defendant, and in no other way, and upon the notice aforesaid of defendant's rights, did deed and make transfer of said lands to plaintiff, in all in acres about 14,838.98, in town lots about 1,141.22; and the plaintiff then succeeded said John I. Blair in his relation to defendant in said lands and contract thereabout, and did take

his place therein, and undertake in consideration of said conveyances to carry out the obligations of said Blair in the premises of said contract; and did then and thereby become liable to defendant: 1st, to permit him, said defendant, to sell all of said town lots and pay him therefor ten per cent. of the proceeds thereof, or, failing therein, to pay defendant said 10 per cent. of said proceeds so fast as said lots should be sold, less the actual cost to plaintiff of the making of said sales; 2d, to pay to defendant the one-half of the proceeds of sales of said lands (not laid off into stations and town lots), less the actual cost per acre, and taxes paid, with seven per cent. interest thereon, invested therein by said John I. Blair, so fast as said lands should be sold, and as sold.

And defendant says that of said town lots so laid off as aforesaid, and in which defendant is interested as aforesaid by said contract, there have already, from time to time, to August 31st, 1873, been sold and payment received in large numbers for the aggregate value and payment of $410,396.04.

That the actual cost of making said sales did not exceed 2½ per centum, and that on account of said commissions aforesaid plaintiff has refused and still refuses to pay defendant anything, and is indebted to him in the just sum of $35,000.00, with 6 per cent. interest from the date of sale. That of said lands said plaintiff has from time to time, prior to August 31st, 1873, sold and conveyed a large amount in acres, in all for an aggregate receipt payment and price of $30,000. That the actual cost to said Blair, and the taxes actually paid out on said lands so sold, either paid by said Blair or said plaintiff, adding thereto seven per cent. interest per annum, did not exceed $3,000. That the amount now due defendant from plaintiff by reason of said contracts, and the liability of plaintiff thereon, together with six per cent. interest from the date of such sales, amounts to $100,000, arising from sales prior to August 31st, 1873.

Wherefore, and by reason of the foregoing premises, defendant says plaintiff ought to be held to account to defendant as aforesaid, claims there is due him in the aggregate at this

date, on said accounts, the sum of $100,000, for which he prays judgment against plaintiff, and for costs.

. . The plaintiff demurs to each of the three cross-claims filed by defendant herein, because it appears upon the face of each of the same that the several contracts therein set out were not to be performed within one year from the time of the making the same, and the said cross-claims fail to show that such contracts were in writing.

And for further and other cause of demurrer to each of said cross-claims, plaintiff says that the defendant seeks to hold plaintiff liable for the debt and default of John I. Blair upon contracts made between said Blair and defendant, and said cross-claims nowhere show that the undertaking on plaintiff's part was or is in writing signed by plaintiff, nor do the same show that John I. Blair has been discharged from liability on said contracts. Wherefore plaintiff prays judgment, etc.

. This demurrer was sustained. The defendant appeals; and assigns this ruling as error.

*Preston & Son, Thos. Corbett,* and *Boal & Jackson,* for appellant.

*E. S. Bailey* and *N. M. Hubbard,* for appellee.

. COLE, J.—I. The first question made by the demurrer is, whether the contract, upon which the cross claim is based, comes within our statute of frauds, which provides, Rev., Sec. 4006–7, subdivision 5, that no evidence is competent, unless in writing, of a contract " that is not to be performed within one year from the making thereof." Code of 1873, Sec. 3663–4, is the same, and the language is almost identical with the original statute of frauds of 29 Car. II. The authorities upon the question are not in perfect harmony, so far at least as respects their language or form of expression. The leading case of *Peter v. Compton,* Skinner, 353, s. c. 1 Smith's L. C., 143, was decided within a few years after the enactment of the original statute of 29 Car. II., and is stated in the head note as follows: "'An agreement that is not to be performed within one year from the making thereof' means, in the stat-

ute of frauds, an agreement which appears from its terms to be *incapable* of performance within the year." While the language of the report is: "Where it appears by the tenor of the agreement that it is to be performed after the year, there a note (in writing) is necessary; otherwise not." Again it is said, per Denison, J., in *Fenton v. Emblers*, 3 Burr, 1278, s. c. 1 Wm. Blackstone, 353, "the statute of frauds plainly means an agreement *not* to be performed within the space of a year, and expressly and specifically so agreed; it does not extend to cases where the thing *may* be performed within the year." And the learned annotator of the American cases, in his notes to *Peter v. Compton*, 1 Smith's L. C., 143, says: "But the statute will not apply, when the contract can, by any possibility, be fulfilled or completed in the space of a year, although the parties may have expected that its operation would extend through a much longer period. Citing *Kent v. Kent*, 18 Pick., 569; *Peters v. Westborough*, 19 Ib., 364; *Blake v. Cole*, 22 Ib., 97; *Souch v. Strawbridge*, 2 C. B., 808; *Clark v. Pendleton*, 20 Conn., 495; *Derby v. Phelps*, 2 N. H., 515; *Russell v. Slade*, 12 Conn., 455; *M'Lees v. Hale*, 10 Wend., 426; *Plimpton v. Curtiss*, 15 Ib., 336." See further, *Peter v. Compton*, 1 Smith's L. C., 143, *et seq.;* Smith on Contracts, 109–114; Pars. on Contr., 2 Vol., 45 and 3 Vol. 35, *et seq.*, and the cases cited in the notes to each.

Further reference to cases need not be here made. The difference in the manner of stating the meaning of the stat-ute does not always indicate a different construc-tion; and it is not impossible that a careful anal-ysis of the cases might exhibit more harmony in result, than the different forms of expression

**1. STATUTE OF FRAUD : contract to be performed within a year: evidence.**

would, at first, seem to indicate. It will be observed that the statute is negative in its language—any contract that is not to be performed within one year from the making thereof. It is not sufficient to bring a case within the statute, that the parties did not contemplate the performance within a year; but there must be a negation of the right to perform it within the year. This negation of the right to perform within the

year, may be shown by an express stipulation in the contract that it shall not be performed within that time; by an express stipulation to be occupied more than that time in the performance; by a contract, the terms of which cannot, per possibility, be performed within the year; by a contract, the terms of which show, though not in express language, that the party has no right to perform it within the year. Unless the contract comes within one of these classes, it is not within the statute.

It is not sufficient to bring it within the statute, that the parties manifestly intended to occupy more than a year in its performance, or that it is difficult to so perform, or improbable that it can be performed within that time, so long as the right to perform it within the year remains, and it is possible to do it. In other words, to be within the statute, the contract itself must show from the nature of its subject matter, by its express terms, or by its necessary implication, that its performance within the year is forbidden—it must show that it is *not* to be performed. The statute does not require that the contract *must* be performed within the year, but it requires that the contract shall show that it *must not* be performed in order to render it invalid. In this case, there is nothing in the contract alleged in the cross claim, which shows that it was not to be performed within a year, how difficult or improbable soever its performance within that time might have been. It is, therefore, not within the statute.

II. The second question made by demurrer is, whether the contract alleged, so far as respects the promise of plaintiff to perform the obligations of Blair, is within the third subdivision of our statute of frauds, which renders contracts to answer for the debt, default, or miscarriage of another, incompetent, unless in writing and signed by the party charged. The contract alleged is, that the plaintiff, in consideration of the conveyance of lands and lots, agreed to discharge Blair's obligations to defendant arising out of them. This is clearly a case where the promise to pay the debt of another arises out of a new and original consideration moving between the newly contracting parties,

2. ———: promise to pay the debt of another.

and is not within the statute. The plaintiff is under obligation to pay its own debt or consideration for the land and lots, and the fact that, by doing so, it will also discharge a debt of Blair's, does not render its agreement to pay any the less binding. We have recently ruled this point the same way, several times. See *Johnson v. Knapp*, 36 Iowa, 616, and cases cited; *Chamberlin v. Ingalls*, 38 *Ib*., 300.

REVERSED.