C. C. HAUFF HARDWARE, INC., appellant, v. LONG MANUFACTUR-
ING COMPANY, a corporation, appellee.

No. 51786.

(Reported in 136 N.W.2d 276)

JUNE 30, 1965.

William R. Crary, of Cedar Rapids, for appellant.

Doerr, Dower & Rehling, of Davenport, for appellee.

LARSON, J.—The appellant, C. C. Hauff Hardware, Inc., hereinafter referred to as Hauff, is a corporation located at Merrill, Iowa, engaged in wholesale and retail hardware and implement business. The appellee, Long Manufacturing Company, a corporation, hereinafter referred to as Long, is a manufacturer of farm machinery with its principal place of business in Tarboro, North Carolina.

In May 1960 Hauff's manager and a representative of Long met to discuss Long's desire to establish a distributorship in western Iowa. Under an oral agreement, which was to continue indefinitely, Hauff was to sell and obtain dealers for Long's elevators, bale conveyors and augers in twenty-two specified western Iowa counties, and was to receive the normal distributor's discount of 20/20 off the list price. Long agreed neither it nor anyone acting on its behalf would sell those products in that territory, and while Hauff did not agree to purchase any definite amount of machines or parts, Hauff understood it was to promote the merchandise, get as many retailers as possible in the territory, and service them. An $8000 order for machines and parts was placed at once and there was an additional order within three months of approximately $12,000. During the period from May 1960 until June 1, 1961, Hauff had obtained and sold goods to thirty-three dealers and expended certain amounts in promotional endeavors.

On or about June 1, 1961, Long advised Hauff that it was placing its own salesmen in the territory, would not sell to it under distributor prices except on parts necessary to make equipment on hand complete, and was at that time terminating the prior agreement.

Hauff asked Long to take back the inventory it had on hand, which it first agreed to do and then upon reconsideration refused because the parts and equipment were then obsolete. However, Long did obtain a buyer for some of the inventory and owes Hauff some $4104.72 for same. The stock remaining in Hauff's

hands consisted of repair and replacement parts usable only by Long distributors and is only of junk value otherwise.

In its action for damages Hauff alleged breach of the agreement to sell the machinery and parts at the agreed discount, breach of the agreement not to sell direct to dealers in that territory, and termination of the agreement without reasonable prior notice to Hauff. Damages were claimed for expenses of promotion and territorial development, loss of profits, and refusal to take back all the Long equipment and parts on hand June 1, 1961.

The trial court held that, although no notice of termination was given prior to termination, as a matter of law such a notice was unnecessary, that the reasonable notice requirement meant only that the contract was to exist for a reasonable length of time, that thirteen months was such a time, and that there was no liability for the alleged breach of contract. However, the court did find that, since Long in effect took back $4104.72 worth of stock and sold it to its dealer in Minnesota, it was indebted to Hauff for that amount, not as damages but as an admitted debt.

Appellant's appeal raises the questions: (1) Did Long breach the oral exclusive distributorship contract by discontinuing the relationship with Hauff without giving Hauff prior reasonable notice thereof? (2) If so, what is the measure of damage? The answer to the first question is in the affirmative, and since appellant has abandoned its claim for loss of profits the measure of damages must be confined to promotional expenses proven and the value of unusable stock left in Hauff's possession not repurchased by Long. Since the trial court erred in finding no liability except as to the account stated, we must reverse that finding and remand the case for further determination as to damages.

■■ I. A distributorship agreement where the distributor is to make purchases, develop territory, and carry stock of the manufacturer for an indefinite period of time may not be terminated without notice or fault of the distributor, and, if it is so terminated, damages are recoverable for the breach. Des Moines Blue Ribbon Distributors v. Drewrys Ltd., U. S. A., 256 Iowa 899, 908, 129 N.W.2d 731, 737, and citations. The rule in

this jurisdiction, we said therein, was that when no time limitation appears in such a contract it is regarded as terminable by either party on reasonable notice, citing Hess v. Iowa Light, Heat & Power Co., 207 Iowa 820, 826, 221 N.W. 194, and citations; 17A C. J. S., Contracts (1963), section 398, page 481; 12 Am. Jur., Contracts, section 305, and referring to Hardin v. The Eska Co., 256 Iowa 371, 373, 127 N.W.2d 595, 596. In the latter case we referred to Miller v. Lawlor, 245 Iowa 1144, 1153, 66 N.W.2d 267, 273, 48 A. L. R.2d 1058, which quoted with approval from Restatement of the Law of Contracts, section 90. While the issues in the Hardin case and those cases cited therein are slightly different, it is stated therein that a contract which contemplates services, expenditures and action other than personal services only is valid and effective until at least a reasonable notice of cancellation is given, or good cause for termination is shown.

This is not the situation found in Lewis v. Minnesota Mutual Life Ins. Co., 240 Iowa 1249, 37 N.W.2d 316, cited by appellee, where it was held a contract for lifetime employment which placed the employee under no obligation to continue his services as an agent of the employer and left the amount of service which would be rendered entirely at his option, with no financial liability for a failure, was invalid. There we held the contract unenforceable for lack of such mutuality amounting to a lack of consideration. The distinction, of course, is that where one party is under obligation to make reasonable expenditures to develop a territory or business, and fails to do so, that failure would indeed constitute a breach. In such instance there is sufficient mutuality to sustain an enforceable contract, as pointed out in Des Moines Blue Ribbon Distributors v. Drewrys Ltd., U. S. A., supra, at page 906 of 256 Iowa, page 736 of 129 N.W.2d 731. As to contracts of this nature we said: "A distributorship contract is more than a mere contract of agency. It is also a sales contract but it is also more than a mere sales contract. It partakes of the substantial aspects of both." (Citing cases) So, as here, where plaintiff under the contract was granted a sole distributorship for an indefinite time, furnished some consideration other than personal services to be rendered thereunder as an

agent, the contract continues for a reasonable time, and it may be terminated without cause *only* upon reasonable notice.

 It may be conceded this contract has continued for a reasonable time as defendant asserts, but that is not alone sufficient to avoid liability. Under the facts disclosed by this record, termination without giving plaintiff time to adjust should in reason entitle him to show his resulting damages, if any, and to recover for them. Also see California Wine Assn. v. Wisconsin Liquor Co., 20 Wis.2d 110, 121 N.W.2d 308, 314–316; Jack's Cookie Co. v. Brooks, 4 Cir., 227 F.2d 935, 938; 4 Williston on Contracts, Revised Ed., section 1027A, page 2852; 1A Corbin on Contracts (1963), section 155, page 26.

Without again discussing the contentions advanced both in this and the Drewrys case, we must conclude Hauff was entitled to a reasonable notice prior to the actual termination of this contract, or the finder of fact must find just cause for the termination of this agreement on June 1, 1961, in order to avoid liability for the breach.

II. The trial court did not have the benefit of our decision in Des Moines Blue Ribbon Distributors v. Drewrys Ltd., U. S. A., supra, 256 Iowa 899, 129 N.W.2d 731, when it rendered its opinion. Had it been available, no doubt due consideration would have been given to evidence of due cause for termination, as well as to promotional costs properly attributable to defendant.

The trial court did not base its decision upon a finding of just cause for termination, and that question remains unresolved. However, it does appear the anticipated benefits from this business venture did not materialize to either party. Appellant purchased some $22,000 worth of stock, parts and equipment in the first three months of the agreement, and less than $1000 worth during the remaining ten months. Thus it seems the venture was proving fruitless for Hauff, which may or may not have caused it to cease contemplated promotional efforts. It hired salesmen from June 14, 1960, through September 30, 1960, and from April 1961 through June 1961 to sell Long and other merchandise handled by Hauff to dealers throughout the given territory. Their commissions just about equaled the cost to Hauff. There

was also evidence Hauff's manager spent about one third of his time in Long promotional efforts and that it provided storage for Long parts and equipment. These facts; of course, bear upon both the issue of cause for termination and the issue of damages to Hauff for termination without notice.

III. There were no past profits from this venture, and appellant does not claim for the loss of future profits. Nevertheless, for a proper determination of the issues of good cause for termination and possible damages as above indicated, the case must be remanded for further consideration by the district court.—Reversed and remanded.

All JUSTICES concur.