John SHEARON, d/b/a Shearon Lumber Sales, Appellant,

v.

BOISE CASCADE CORPORATION, Appellee.

No. 72–1370.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 8, 1973.

Decided May 18, 1973.

Roy W. Meadows, Des Moines, Iowa, for appellant.

James L. Krambeck, Des Moines, Iowa, for appellee.

Before MATTHES, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

BRIGHT, Circuit Judge.

Plaintiff John Shearon (Shearon), a lumber wholesaler doing business as Shearon Lumber Sales, brought an action against Boise Cascade Corporation (Boise), a lumber producer, for breach of an alleged oral contract giving Shearon the exclusive right to sell Boise lumber products to Capp Homes of Iowa (Capp), a consumer of very substantial amounts of lumber for its prefabricated homes. The jury awarded Shearon $100,000 in damages, but the district court denied any recovery by granting defendant's motion for judgment n. o. v.

* Eastern District of Michigan, sitting by designation.

The district court also granted a new trial conditional upon this court's failure to sustain the judgment adverse to the jury verdict. We reverse on the grant of judgment n. o. v., but affirm the grant of a new trial and remand the case for further proceedings.

The facts presented at the trial disclose that prior to 1963 Shearon had sold substantial quantities of Boise lumber products, primarily studs, to Capp. Shearon also had established considerable rapport with the president of Capp, Hy Diamond.

In the fall of 1963, Gordon King, a sales manager for Boise, sought to increase his firm's lumber sales to Capp. He contacted Shearon at Des Moines, Iowa, and requested that Shearon attempt to convert Capp into a buyer of larger quantities of Boise's lumber products. In this conversation, King allegedly stated that if Shearon could induce Capp to become a more substantial user of Boise products than in the past, Shearon would be protected against other wholesalers in his sale of Boise lumber products to Capp and that Boise would not sell direct to this customer.

Thereafter Shearon contacted the president of Capp for the purpose of inducing Capp to purchase substantial quantities of Inland Douglas Fir, produced by Boise. He submitted a program to Diamond designed to provide Capp's lumber requirements for a one-year period. Apparently Capp adopted this program which resulted in its purchasing substantial amounts of dimension lumber from Boise for its 1964 annual requirements, thus greatly increasing sales of Boise lumber to Capp. However, although Capp purchased 140 carloads of lumber materials from Boise in 1964, Shearon's sales accounted for only 59 carloads. Another wholesaler handling Boise's products underbid Shearon's price for a substantial part of Capp's lumber requirements from Boise. Shearon vigorously protested this apparent breach of the agreement. King explained that Boise had quoted the second wholesaler a price on lumber products

without realizing that this wholesaler was seeking to sell to Capp. Boise later realized its mistake but could not retreat from its commitment to make the shipment to the second wholesaler. According to Shearon, King promised to come to Des Moines to help get things straightened out and to maintain Capp as Shearon's customer.

In late 1964, King returned to Des Moines and met with Shearon and Capp's president, Diamond. King indicated to Diamond that he would like to have Capp submit its lumber requirements to only one wholesaler of Boise products. According to the testimony of both Shearon and Diamond, King stated that he wanted Shearon to have the Capp account. Capp's lumber purchases from Boise for 1965 were ordered by Shearon. That year, Boise shipped more than 200 carloads of lumber products to Capp.

By the next year, circumstances had changed. A new president of Capp approached Boise's management with a proposal to buy directly from the manufacturer, cutting out the middleman-wholesaler. Boise agreed to this proposal and for the years here in question, 1966 through 1969, sold directly to Capp.

In bringing this action, Shearon alleged and the jury found that he and Boise entered into an oral agreement in September of 1963, under the terms of which Shearon undertook to increase Capp's purchases of Boise's lumber products, and in return for his efforts, if successful, Boise agreed to sell to Capp only through Shearon.

In denying Shearon's right to judgment on the jury verdict, the district court granted the motion for judgment n. o. v. on the following grounds:

(1) The alleged oral agreement could not be performed within one year and evidence to prove such agreement was not admissible under the Iowa statute of frauds;

(2) There was insufficient competent evidence to establish part performance

to remove the agreement from the statute of frauds;

(3) The agreement was not enforceable for want of mutuality and consideration;

(4) The evidence was vague and insufficient to establish an agreement on essential and material terms necessary for the formation of an enforceable contract;

(5) The damages awarded by the jury were not sustained by sufficient admissible evidence, but rested on speculation and conjecture.

We turn to each of these issues.

## I.

### THE STATUTE OF FRAUDS

The Iowa statute of frauds provides that "Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent: * * * Those [contracts] that are not to be performed within one year from the making thereof." Iowa Code Ann. § 622.32 (1950). Appellee argues that the agreement between King, acting for Boise, and Shearon falls within the statute since the evidence shows that although the alleged oral agreement was made in 1963, its contemplated and actual performance extended beyond 1964. Assuming, arguendo, the correctness of this assertion, the oral contract nevertheless falls outside of the statute, for its terms do not preclude the possibility of performance within one year.

In approaching the statute of frauds issue, it is well to note the nature of the performance demanded of both parties. While each party might perform on a continuing basis, the parties did not expressly specify the duration of the contract. Thus, the contract was indefinite as to time of performance.

Iowa courts from a very early date have tended to limit the application of the "performable within one year" provision of the statute of frauds. In Blair

Town Lot and Land Co. v. Walker, 39 Iowa 406, 411–412 (1874), the Iowa Supreme Court expressed its restrictive view of the one-year provision:

It will be observed that the statute is negative in its language—any contract that is not to be performed within one year from the making thereof. It is not sufficient to bring a case within the statute, that the parties did not contemplate the performance within a year; but there must be a negation of the right to perform it within the year. This negation of the right to perform within the year, may be shown by an express stipulation in the contract that it shall not be performed within that time; by an express stipulation to be occupied more than that time in the performance; by a contract, the terms of which cannot, per possibility, be performed within the year; by a contract, the terms of which show, though not in express language, that the party has no right to perform it within the year. Unless the contract comes within one of these classes, it is not within the statute.

Another early Iowa case holds the statute applies only to a contract not to be performed on either side within one year. Smalley v. Greene, 52 Iowa 241, 3 N.W. 78 (1879). In Stauter v. Walnut Grove Products, 188 N.W.2d 305 (Iowa 1971), the court relied on Blair, supra, 39 Iowa 406, in enforcing an oral employment agreement which provided that employment was to continue as long as the plaintiff "kept up on his job." The court held that the statute was inapplicable due to the possible death of the plaintiff or the possible cessation of the defendant's business within one year, however improbable those contingencies might be.

█ Although the parties in the present case contracted with regard to a single customer, their agreement seems to fall within the general classification of exclusive distributorship agreements in which one party (manufacturer or owner) grants another party the exclu-

sive right to distribute the products of the former. Iowa courts have apparently adopted the early restrictive view of the statute, as expressed in *Blair*, in enforcing distributorship arrangements and similar contracts. Iowa cases have held oral exclusive distributorship agreements of indefinite duration enforceable, even when the contemplated performance could or did extend beyond a one-year period. *See, e. g.*, C. C. Hauff Hardware, Inc. v. Long Mfg. Co., 257 Iowa 1127, 136 N.W.2d 276 (1965); Atlas Brewing Co. v. Huffman, 217 Iowa 1217, 252 N.W. 133 (1934); Hirschhorn v. Bradley, 117 Iowa 130, 90 N.W. 592 (1902).

■ The Iowa cases are in accord with the general rule that an oral contract is not invalidated by the statute of frauds unless, according to the reasonable interpretation of its terms, the contract *requires* that it should not be performed within one year. Warner v. Texas and Pacific Ry. Co., 164 U.S. 418, 434, 17 S.Ct. 147, 41 L.Ed. 495 (1896); 3 S. Williston, Contracts § 495, pp. 575–579 (3d ed. 1960); 2 A. Corbin, Contracts, § 344, pp. 534–537 (1950). Corbin also states that, "Contracts for employment *or other performance* that is to begin within a year and is to continue for an indefinite, unspecified period, are terminable by either party at any time and *are held not to be within the one-year clause of the statute.*" *Id.* § 446, p. 552 (emphasis added).

■ Since the oral contract in question is of no specified duration, since Shearon could potentially have completed his performance within one year, and since one or both parties might have gone out of business within a year, the contract by its terms clearly does not preclude the possibility of performance within one year.[1]

---

1. Appellee cites Huston v. Gelane Co., Inc., 254 Iowa 752, 119 N.W.2d 188 (1963), in support of the ruling of the trial court, but that case is inapposite because the oral contract in question there stipulated an 18-month period for employment rather than an indefinite period.

## II

### MUTUALITY AND CONSIDERATION

The argument is made that the alleged oral contract lacked mutuality and consideration because Shearon was not restricted to promoting Boise's products in his sales to Capp and because he was free to perform or not at his pleasure. The law of Iowa in regard to mutuality and consideration in exclusive distributorship contracts is summarized in Des Moines Blue Ribbon Distrib., Inc. v. Drewrys Ltd., U.S.A., 256 Iowa 899, 129 N.W.2d 731 (1964), where the Iowa court rejected an argument similar to that presented by the appellee here. The court said:

We think the validity of the claimed agreement depends on whether there was consideration for it. We have held "If the lack of mutuality amounts to a lack of consideration, then the contract is invalid. But mere lack of mutuality in and of itself does not render a contract invalid. If mutual promises be the mutual consideration of a contract, then each promise must be enforceable in order to render the other enforceable. Though consideration is essential to the validity of a contract, it is not essential that such consideration consist of a mutual promise." * * *

Numerous authorities are to the effect that where a contract granting a sole distributorship for an indefinite time is supported by some consideration other than the services to be rendered thereunder as an agent, the contract will continue for a reasonable time and may be terminated without cause only upon reasonable notice. There is substantial evidence plaintiff and its assignor furnished such additional consideration. It could properly be found plaintiff's assignor agreed to, and did in fact, purchase and pay

for defendant's products, take title to them, assume the risk of their destruction, maintain warehouse facilities, keep an adequate stock of defendant's products on hand, advertise and otherwise promote their sale and tie up substantial amount of capital in inventory and accounts receivable.

Some of these matters are related to the agency aspects of the agreement but go beyond them. A distributorship contract is more than a mere contract of agency. It is also a sales contract but it is also more than a mere sales contract. It partakes of the substantial aspects of both. [*Id.* at 736 (citations omitted).]

The court concluded that the above enumerated factors constituted sufficient consideration from the plaintiff to make the contract enforceable. *Accord,* C. C. Hauff, *supra,* 257 Iowa 1127, 136 N.W. 2d 276. *See also* Collins v. Parsons College, 203 N.W.2d 594, 598 (Iowa 1973); Atlas Brewing Co., *supra,* 217 Iowa 1217, 252 N.W. 133; *Hirschhorn, supra,* 117 Iowa 130, 90 N.W. 592; Kaufman v. Farley Mfg. Co., 78 Iowa 679, 43 N.W. 612 (1889).

■ Here, under the agreement, if deemed bilateral, Shearon promised to use his best efforts to convert Capp to a full-line lumber customer of Boise, and if deemed unilateral, Shearon actually performed valuable services in convincing Capp of the merits of Boise products in 1964 and in providing sales services the following year. Additionally, since the lumber wholesalers purchased the lumber on their own accounts, Shearon supplied "additional consideration" similar to that supplied in the *Des Moines Blue Ribbon* case, *supra,* 129 N.W.2d at 736, which the Iowa court found adequate to overcome the lack of consideration and mutuality arguments.[2] Thus the claim of lack of consideration and mutuality is without merit.[3]

### III.

### TERMS OF THE CONTRACT

■ Appellee contends that the proof was insufficient to establish the essential terms of a contract. We reject this contention. The jury instructions contained the following provision:

In order to constitute a valid contract between two parties, there must be an offer and acceptance of a proposition so that the minds of the two parties "meet" concerning the essential terms and condition of the subject about which they are contracting, and they thereby agree to the same thing. An acceptance of an offer which contains additional terms or which varies the terms of the offer would not make a binding contract, for there would still be no "meeting of the minds" of the parties. Such an acceptance would constitute a counter-offer which could then be accepted, thereby forming a binding contract, or rejected by the other party. [Instruction No. 9.]

We think this instruction was proper and the appellant's evidence, although scarce, was adequate to permit the jury to find for the appellant.

2. We note that the questions of mutuality and consideration were directly presented to the jury in these terms:

If you find by a preponderance of the evidence that the terms of this alleged contract obligated plaintiff to perform his promise, if any, the alleged contract would have sufficient mutuality and consideration to constitute a binding agreement. If on the other hand, if you find the terms of the alleged contract left it optional with plaintiff whether or not he would perform his promise, then the alleged agreement would lack mutuality and consideration and would not

be binding on defendant and you should find for defendant. [Instruction No. 8.] As evidenced by the verdict, the jury obviously determined this issue in favor of the plaintiff. The evidence adequately supports such a determination.

3. Lewis v. Minnesota Mut. Life Ins. Co., 240 Iowa 1249, 37 N.W.2d 316 (1949), cited by appellees, is not controlling here. That case, involving a lifetime employment contract, was found specifically distinguishable from a distributorship case by the Iowa Supreme Court in C. C. Hauff Hardware, Inc. v. Long Mfg. Co., 257 Iowa 1127, 136 N.W.2d 276 (1965).

## IV.

### DAMAGES

Appellee also argues that appellant's damages were so uncertain and speculative that recovery must be denied. On this matter the court instructed:

In this regard, you are instructed that damages are recoverable only to the extent that the evidence affords a sufficient basis for determining their amount with reasonable certainty. Damages which are uncertain, contingent or speculative in their nature cannot be made the basis of a recovery.

Plaintiff seeks to recover for loss of earnings he claims to have incurred as a result of defendant's undertaking to sell its lumber products direct to Capp Homes after 1965. In the event you find plaintiff is entitled to recover on this item, then the measure of his recovery is such sum as you find, from a preponderance of the evidence, he would have earned from selling defendant's products to Capp Homes during this period. In arriving at your decision you must determine what, if anything, Capp Homes would have purchased from plaintiff during this period taking into consideration all the facts and circumstances of the case. The evidence presented as to the purchases of Capp Homes direct from defendant is not necessarily determinative of the purchases they would have made from plaintiff during the same period. To recover for lost earnings plaintiff must prove by a preponderance of the evidence that such amounts are reasonably certain to have been earned or received. [Instruction No. 12.]

■ Iowa law appears to permit a flexible approach to proof of the amount of damages sustained. In DeWaay v. Muhr, 160 N.W.2d 454 (1968), the Iowa Supreme Court stated:

Courts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated. [*Id.* at 460.]

The court in *DeWaay* found the evidence sufficient to permit a jury to make a "reasonable approximation" of the plaintiff's claimed loss of net profits.

■ In cases involving exclusive distributorships, Iowa has apparently permitted proof of damages similar to that offered by Shearon here, *e. g.*, sales made by the distributor before the breach, sales made by the successor to the injured party, and margin of profit anticipated on the type of product being sold. *See, e. g., Des Moines Blue Ribbon, supra,* 256 Iowa 899, 129 N.W.2d 731; *Atlas Brewing Co., supra,* 217 Iowa 1217, 252 N.W. 133; *Hirschhorn, supra,* 117 Iowa 130, 90 N.W. 592. However, while we think that there was sufficient evidence by which the jury could reasonably approximate the amount of damages that Shearon sustained during a given period, we do not think that the question of the length of such period was properly submitted to the jury. The Iowa law as enunciated in *C. C. Hauff, supra,* 136 N.W.2d at 279, provides:

[W]here plaintiff under the contract was granted a sole distributorship for an indefinite time, furnished some consideration other than personal services to be rendered thereunder as an agent, the contract continues for a reasonable time, and it may be terminated without cause *only* upon reasonable notice.

*Accord, Des Moines Blue Ribbon, supra,* 256 Iowa 899, 129 N.W.2d 731; *Atlas Brewing Co., supra,* 217 Iowa 1217, 252 N.W. 133; *Hirschhorn, supra,* 117 Iowa 130, 90 N.W. 592; *Kaufman, supra,* 78 Iowa 679, 43 N.W. 612. In *Des Moines*

**1118**

*Blue Ribbon, supra,* 256 Iowa 899, 129 N.W.2d 731, the Iowa Supreme Court explicitly approved of a jury instruction which permitted the jury to "consider and decide what period of time is a reasonable period of time for plaintiff to recover such damages." *Id.* at 737.

Accordingly, we vacate the judgment n. o. v. and remand for a new trial in conformity with the ruling of the district court.

Appellant shall have his costs.