MICHAEL TODD & CO., INC., a Nebraska Corporation, Appellee,

v.

The LACAL COMPANY, INC., a California Corporation, Appellant.

No. 77–1828.

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1978.

Decided Sept. 15, 1978.

mitigated any losses suffered. We reject both contentions and affirm the judgment of the district court.

## I.

Lacal is a manufacturer of street sweeper replacement parts intended primarily for use by municipalities. Todd sells maintenance products to state and municipal highway departments.

On June 12, 1973, the parties entered into a "Master Distributor Agreement" (the Agreement). Under the Agreement, Todd became Lacal's exclusive distributor of street sweeper replacement parts in a six state region for five years.[3] Todd agreed, in exchange for the exclusive distributorship, to use its best efforts in selling Lacal's street sweeper parts and to purchase a certain amount of inventory.

Prior to the Agreement, the practice in the industry had been for manufacturers like Lacal directly to provide the municipalities with parts. Todd's salesmen experienced some reluctance by municipalities to change their established practice and Todd had to educate its customers that a distributorship arrangement was being employed. To overcome this reluctance, Todd diligently marketed Lacal's products and employed new sales techniques, which were very successful.[4]

In order to prevent customers from bypassing Todd and dealing directly with the manufacturer Todd normally included its own label on products it sold. Under the Agreement, however, which Lacal drafted, the Lacal products that Todd sold had a Lacal label. Thus, Todd's efforts favorably

Steven M. Luttbeg of Eisenstatt, Higgins, Kinnamon, Okun & Stern, Omaha, Neb., for appellant; John C. Brownrigg, Omaha, Neb., on brief.

Robert V. Dwyer, Jr. of McGrath, North, O'Malley, Kratz, Dwyer, O'Leary & Martin, Omaha, Neb., for appellee; James B. Cavanagh, Omaha, Neb., on brief.

Before BRIGHT and HENLEY, Circuit Judges, and LARSON, Senior District Judge.[*]

HENLEY, Circuit Judge.

Michael Todd & Co., Inc. (Todd) brought this diversity action for breach of contract against The Lacal Company, Inc. (Lacal).[1] The district court,[2] holding that Lacal had wrongfully terminated the contract, awarded Todd damages, including loss of profits. In this appeal, Lacal does not challenge the district court's conclusion that Lacal breached the contract. Rather, Lacal claims that: (1) there was insufficient evidence upon which to calculate damages; and (2) Todd, by successfully entering into similar contracts after the breach, fully

---

[*] The Honorable Earl R. Larson, United States Senior District Judge, District of Minnesota, sitting by designation.

1. The parties agree that Nebraska law governs this diversity action.

2. The Honorable Richard E. Robinson, Senior District Judge, United States District Court for the District of Nebraska. This action was tried to the court without a jury.

3. The six states included Iowa, Nebraska, Wyoming, Kansas, Missouri, and Minnesota. It appears that street sweeper replacement parts

are virtually interchangeable and the field is highly competitive.

4. In addition, Todd added storage racks to expand its warehouse facilities and commenced educating its salesmen about the marketing of sweeper parts.

In 1972, just before the Agreement was consummated, street sweeper parts constituted less than one percent of Todd's total business. In 1976, this percentage had increased to 15-20 percent. Thus, it is clear Todd's marketing efforts were successful as well as intense.

enhanced Lacal's name and goodwill in the six state region.

The district court found, and the record makes clear, that Todd performed in accordance with its responsibilities under the Agreement. In fact, on several occasions, Lacal's representatives commended Todd for performing so well and indicated that Todd was the best of Lacal's distributors.[5]

On October 31, 1974, not long after it had been consummated, Lacal terminated the Agreement. The termination became effective December 31, 1974.[6] The district court cited, as Lacal's reason for the termination, Lacal's belief that it could obtain greater profits by dealing directly with municipalities. The record amply supports the district court's conclusion.

On April 21, 1975, Lacal sent a new price list, with substantially lower prices, to the municipalities to whom Todd had been distributing Lacal products under the Agreement.[7] A letter accompanying the price list suggested that the master distributor arrangement had been unsatisfactory and that the distributors had been charging excessive prices.[8] Naturally, the customers to whom Todd had sold Lacal sweeper parts under the Agreement and with whom Todd continued to do business after the termination asked Todd why, in light of Lacal's post-termination sales at lower prices, they had previously been forced to pay excessive prices to Todd. Todd experienced great difficulty in responding to these inquiries.

Several of Todd's customers accused Todd of dealing dishonestly with them. The district court concluded, as the record confirms, that the price list and accompanying letter adversely affected Todd's credibility and goodwill.[9]

After a review of the record we are satisfied, as the district court specifically found, that Lacal wrongfully breached the Agreement and engaged in certain post-termination activities that substantially damaged Todd's goodwill. We, thus, turn to the more difficult question of damages.

## II.

■ In Nebraska, consistent with the general rule, an aggrieved party may recover all damages suffered from a breach of contract, including losses sustained as well as gains prevented. *See Rambo v. Galley,* 188 Neb. 692, 199 N.W.2d 14, 17 (1972). The object is to put the party in the posture he would have enjoyed had the contract not been breached. *See Gallagher v. Vogel,* 157 Neb. 670, 680, 61 N.W.2d 245, 251 (1953); 5 A. Corbin, Contracts § 1003 at 36 (1964).

■■ While the burden of proof rests upon plaintiff in a case of this kind, damages need not be established with absolute certainty. So long as a sufficient basis is asserted from which damages can be approximated, any reasonable method of computation is permissible. *See Shearon v. Boise Cascade Corp.,* 478 F.2d 1111, 1117 (8th Cir. 1973); *Brinks, Inc. v. Hoyt,* 179

5. James Walker, Todd's secretary, testified that because it did not keep accurate records, Todd occasionally asked Lacal to comment on Todd's performance. Todd was told it was doing an outstanding job.

6. Todd had received a letter on May 14, 1974, suggesting that Lacal was considering eliminating the master distributorship program.

7. Lacal only terminated the exclusivity of its arrangement with Todd. Todd could continue marketing Lacal's products after the breach. The record indicates, however, that Todd was unable to compete with the new prices at which Lacal sold directly to municipalities after the breach.

8. In fact, Lacal intimated in the letter that the distributors had not been maintaining adequate

inventories. The evidence belies this assertion. Todd was willing and able to sell Lacal's products but frequently, because of Lacal's shortages and back orders, was unable to do so. Moreover, the record reveals several missed and incorrect shipments by Lacal.

9. The testimony was fairly extensive. James Walker, Todd's secretary, cited, as an example, a discussion he had with representatives of Joplin, Missouri, one of Todd's customers. After accusing Todd of dealing dishonestly with them, they informed Todd that even though 80 percent of Todd's business with Joplin was in goods other than street sweeper parts, they would no longer do any business with Todd.

F.2d 335, 361 (8th Cir. 1950); *Willred Co. v. Westmoreland Mfg. Co.,* 200 F.Supp. 59, 61–62 (E.D.Pa.1961); 11 S. Williston, Contracts § 1345 at 231–38 (W. Jaeger ed. 1968); Restatement of Contracts § 331, Comment a (1932). While ordinarily in Nebraska damages are expressed as the value of the business lost to the plaintiff, rather than the gain to defendant, such gain may be considered in computing plaintiff's damages when it corresponds to the plaintiff's loss. *Gallagher v. Vogel, supra,* 157 Neb. at 680, 61 N.W.2d at 250.

In the context of a breached exclusive dealership in which a manufacturer terminates the services of an exclusive distributor, sales consummated and business performed by the distributor in the exclusive territory before the breach or by the manufacturer after the breach often form the basis for a reasonably accurate estimate of the profits the distributor might have realized had the relationship not been terminated. *See* 5 A. Corbin, Contracts § 1025 at 161–63 (1964); Restatement of Contracts § 331, Comment e (1932); 11 S. Williston, Contracts § 1346A at 249 (W. Jaeger ed. 1968). In *Shearon v. Boise Cascade Corp., supra,* 478 F.2d at 1117, this court, construing Iowa law, whose standard appears to be similar to that employed in Nebraska, stated:

> In cases involving exclusive distributorships . . . proof of . . . sales made by the distributor before the breach [and] sales made by the successor to the injured party [after the breach have been permitted] . . . . .

The district court acknowledged that Lacal's sales of $8,205.79 for 1976 could not form the basis for Todd's damages award. The court found, however, that Lacal's 1976 sales "juxtaposed" Lacal's receipts from Todd for previous years and, accordingly,

provided a sufficient basis for determining Todd's lost profits during the period immediately following the breach.

The court, acknowledging that Todd's books and records were not introduced by either party, relied primarily on defendant's exhibit 32, which contains a summary of Lacal's cash receipts from Todd during 1971–1975. The court found that thirty three and a half percent of every dollar of cost paid by Todd to Lacal represented Todd's net income. Todd's profits could, thus, be computed by applying this percentage to Lacal's receipts from Todd. The court noted that, while Lacal's receipts would not necessarily be coextensive with Todd's sales, a direct relationship probably existed.

From exhibit 32, the court observed that due to Todd's aggressive sales policy, Todd's sales had increased substantially each year from 1971 to 1975. The court then concluded that Todd's purchases from Lacal, which corresponded to its sales, would have continued to increase had there been no breach. The court also stated, as noted above, that Todd's goodwill and credibility suffered as a result of the price list and letter Lacal sent to its customers after the Agreement was terminated.

The court then concluded that but for Lacal's breach, Todd's estimated net profit for the period immediately following Lacal's termination would have been $8,877.50.[10] The court noted that this figure approximated Lacal's actual sales of $8,205.79 during the same period, *see supra.* The court then awarded Todd damages for the period remaining under the Agreement:

| | |
|---|---|
| July 1974 – June 1975 | $ 9,000 |
| July 1975 – June 1976 | 8,500 |
| July 1976 – June 1977 | 6,000 |
| July 1977 – June 1978 | 4,000 |
| Total | $27,500 |

10. The court determined that had the Agreement not been terminated, Lacal's receipts from Todd would have approximated $40,000 for the 1974–75 year. The court computed this figure by adjusting the 1973–74 figures upward to reflect the approximate rate of growth that

had been experienced in previous years, which the court found would have continued but for the breach. Actual receipts for the period of $13,500 were subtracted leaving $26,500. Then, the 33.5 percentage was applied, thus, arriving at $8,877.50.

**1060**

Appellant argues that the $9000 awarded in 1974–75 was calculated simply by rounding off the $8,877.50 figure, which the court had computed, and that the amounts awarded for subsequent years have no evidentiary support and are based on mere speculation.[11]

As noted above, damages actually incurred need not be computed with precision, see *Rambo v. Galley, supra,* 199 N.W.2d at 16–17. The $8,877.50 figure, which corresponds to Lacal's sales for the period following the breach, in our view, is reasonably supported by the record. The $9000 actually awarded by the court is a reasonable estimation thereof. "Damages are not rendered uncertain as a matter of law . . [merely] because they [are not] calculated with absolute accuracy." *Brinks, Inc. v. Hoyt, supra,* 179 F.2d at 361.

■ The court's award for the years subsequent to 1974–75 seems to have been derived from its other calculation. The court, taking into account the likelihood of future mitigation, decreased the amounts awarded in succeeding years. After a review of the record and exhibits, we cannot say that the $27,500 awarded by the court is excessive as a matter of law. The court expressly found that because of Todd's aggressive sales policies, its purchases from Lacal, and corresponding sales to municipalities, would have increased had the Agreement not been terminated. While we are not entirely satisfied with the methodology employed by the district court, we are convinced the total damages awarded are reasonable and have evidentiary support.

### III.

■ Appellant also argues that Todd has fully mitigated any losses arising from Lacal's breach. As the district court noted, there was some evidence suggesting that Todd's profits and sales have steadily increased since the breach. Apparently, Todd entered into distributorship arrangements in a thirty state area with other companies after the breach. There is no evidence, however, that Todd realized increased sales and profits in the six state area in which it had been marketing Lacal's products under the Agreement.[12] Thus, we agree with the

11. Appellant points out that the termination became effective December 31, 1974. Thus, appellant argues, the district court, in awarding damages for July 1974–June 1975, erroneously included a six month period during which the Agreement was still in effect. We reject this argument. The court did refer to the fiscal year July 1974–June 1975. It does not necessarily follow, however, that the court awarded damages for a period in which none was suffered. The court expressly found that Lacal notified Todd of the termination on October 31, 1974. We choose not to infer that the court ignored one of its express findings.

12. Ordinarily, gains realized by an aggrieved party are not deducted from damages otherwise recoverable unless such gains could not have been made had there been no breach. *See* 5A Corbin, Contracts § 1039 at 256 (1964). Appellant argues that under the Agreement, Todd exclusively sold Lacal's goods in the six state area and would not have been able to market the parts of other companies had the Agreement not been terminated. Thus, any gains realized should be deducted from the damages awarded.

In *Willred Co. v. Westmoreland Metal Mfg. Co.,* 200 F.Supp. 59, 62–63 (E.D.Pa.1961), an exclusive distributor of school furniture sued a manufacturer for breach of an exclusive distributorship contract. The court rejected the manufacturer's argument that the distributor's profits obtained through furniture sales after the breach should have been offset against damages awarded for lost profits. The court stated:

> It is obvious that, had the contract not been breached, the plaintiff's volume of business would have been a great deal larger than it was. . . . The plaintiff . . . would not be put in the position which it would have had if the contract had been carried out if it were allowed no more than the difference between the profit . . . it would have made on the business done by the defendant in violation of the contract and the profit . . . it did make using other suppliers. It is apparent that it would have been able to obtain the contracts . . . the defendant obtained as well as the same ones it got.

*Id.* at 63. *See also* Restatement of Contracts § 336, Comment c, Illustration 6 (1931).

Similarly, as the district court found in this case, Todd's sales would have steadily increased had the Agreement not been terminated. Moreover, there was testimony that, had the contract not been breached, Todd could have sold the parts it actually sold after the breach in addition to the parts sold by Lacal.

district court that Lacal has failed to sustain its burden.

The judgment of the district court is affirmed.

BRIGHT, Circuit Judge, dissenting in part.

I agree with the majority that an award of $9,000 for the period July 1974–June 1975 is reasonably supported by the record. The court's award for the subsequent years, however, has no evidentiary support and is based upon mere speculation.

As the majority notes, damages are often incapable of precise calculation and, in order to be recoverable, need not be established with absolute certainty. *See* 11 S. Williston, Contracts ¶ 1345 at 231–238 (W. Jeager ed. 1968). The law requires, however, that plaintiff offer sufficient evidence from which damages can reasonably be approximated.

After a review of the record in this case, I find no evidentiary support for the district court's calculation of damages after the July 1974–June 1975 period. The court, taking into account its own findings, appears merely to have speculated in computing damages for the periods following the first year of the breach. The majority holds that the $27,500 awarded by the district court is not unreasonable as a matter of law. In my view, without any evidence from which to calculate damages, we cannot say what a reasonable award might have been. Thus, any award is based upon speculation.

I would direct the District Court to grant a remittitur for the damages awarded in excess of $9,000 or, in the alternative, a new trial, at its discretion.

For the foregoing reasons, I respectfully dissent.