72 F.3d 132
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 NAHED TRADING & INDUSTRY CO. and Nahed Trading & Bidding
Est., Plaintiffs-Appellees,
v.
KOHLER CO., Defendant-Appellant.
 No. 95-1880.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 2, 1995.
Decided Dec. 8, 1995.
 
 Before COFFEY, FLAUM and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Nahed Trading distributed Kohler products in Saudi Arabia and the United Arab Emirates between the 1970s and 1986, when Nahed gave up its position and filed this suit seeking compensation for the value of its inventory of Kohler products on hand when the parties' dealings ended. (Nahed also sought compensation for sales Kohler made to end users in Saudi Arabia and the UAE; Kohler filed a counterclaim for damages caused by misrepresentations Nahed made in placing an order through an intermediary. These other disputes were resolved at trial and have not been pursued on appeal.) The parties agree that Wisconsin law governs. The jury determined that Kohler broke its promise to Nahed and assessed damages at $667,553.16--the purchase price of the inventory remaining in 1989 after Nahed ceased efforts to sell Kohler's products, plus transportation and storage costs. Kohler's principal argument on appeal is that this sum bears no relation to any loss caused by its conduct.
 
 
 2
 Before the magistrate judge, presiding by consent under 28 U.S.C. Sec. 636(c), Nahed argued that Kohler had an unconditional obligation to repurchase the inventory at the end of the distributorship, as Kohler had required Nahed to buy its predecessor's inventory at the beginning of the parties' relationship. Such a repurchase obligation does not appear in the parties' writings, however, and is not supplied by Wisconsin law as a background norm. The magistrate judge granted partial summary judgment against Nahed on this theory. Although a party may defend its judgment on any ground preserved in the district court, even one rejected by the judge, see Massachusetts Mutual Life Insurance Co. v. Ludwig, 426 U.S. 479 (1976), Nahed does not now deploy any theory based on an absolute repurchase obligation. Instead it argues that Kohler's breaches of contract injured it by the purchase price of the inventory. Nahed characterizes this as a theory of reliance damages. The magistrate judge rebuffed such a theory on the ground that it had been introduced into the litigation far too late (the theory was first raised on the eve of trial). The magistrate judge held that Nahed is precluded from establishing "reliance damages" to the extent they differ from "consequential damages." That conclusion is not an abuse of discretion. Cf. Bohen v. East Chicago, 799 F.2d 1180, 1184-85 (7th Cir.1986). So the only question we need decide is whether a reasonable juror (see Mayer v. Gary Partners & Co., 29 F.3d 330 (7th Cir.1994)) could conclude that the purchase price of its inventory is an accurate measure of the injury caused by Kohler's breaches of contract--in other words, whether, if Kohler had performed all of its obligations, Nahed would have been more than $650,000 better off.
 
 
 3
 Nahed believes that it was entitled to be Kohler's exclusive distributor (the jury so found) and contends that Kohler violated the exclusivity term in two ways: first, by appointing another distributor in Saudi Arabia, and, second, by making direct sales to customers in Saudi Arabia and the UAE. The first of these theories is unavailing factually. Kohler entered into negotiations for the appointment of a distributor to replace Nahed, but Kohler required the would-be replacement to negotiate with Nahed to take the inventory off its hands. When Nahed and the potential replacement could not agree on a price, the deal fell through. Nahed argues that this process sent signals that it was on its way out and diminished its business; perhaps so, but any "signal" in this case fell short of a breach of contract. No principle of Wisconsin law of which we are aware requires the payment of damages for negotiations that end unsuccessfully. In the end Nahed was not replaced, and no competing distributor was appointed; Nahed simply quit, as it was entitled to do, and Kohler did not appoint a new distributor until a year later. This sequence does not entitle Nahed to damages.
 
 
 4
 Nahed's other theory is that Kohler broke its promises by selling to end users in Saudi Arabia and the UAE. This theory has two components: first, that Kohler sold at all; second, that Kohler did not properly compensate Nahed for those sales it was entitled to make. The contracts of 1983 and 1984 (the only ones reduced to writing) allowed Kohler to make at least some direct sales, provided it paid Nahed a commission of 10% to compensate it for work in stimulating the demand for Kohler products. Kohler did not always pay when required, and the jury in this case awarded Nahed damages on this account; Kohler has not appealed from this portion of the award. Nahed has not articulated any connection between its inventory loss and delay in payment (as opposed to the making of the direct sales), so it is not entitled to inventory damages on this theory.
 
 
 5
 As for the direct sales themselves: we may suppose that at least some of these sales were improper. Nahed says that Kohler promised not to make small sales (price under $50,000) and not to make sales to customers that would transship to Saudi Arabia and the UAE. The difficulty here is that there is no link between the particular breaches and the purchase price of inventory. To show its loss caused by the breach, Nahed had to demonstrate how the direct sales themselves caused injury. Hope Acres, Inc. v. Harris, 27 Wis.2d 285, 134 N.W.2d 462 (1965). Nahed's manager testified that much of this inventory had been in stock since the 1970s and had lost most of its value by the 1980s; it was obsolete. If Kohler had not sold a single item directly into Nahed's territory during the 1980s, the inventory still would have been obsolete.
 
 
 6
 Nahed's briefs and argument suggest one theory of causation. Nahed had to service customers to which Kohler sold directly. In making repairs and performing other services, Nahed broke up complete sets of parts. Some of these could not be reconstituted by buying the missing parts from Kohler; and incomplete sets are worth substantially less than complete sets. This theory could support an award of damages--but it is not the theory on which Nahed prevailed at trial. Instead of seeking the difference between the value of inventory with and without broken sets, Nahed sought the purchase price of its inventory.
 
 
 7
 When asked at oral argument for the strongest case supporting its theory of damages, Nahed cited C.C. Hauff Hardware, Inc. v. Long Manufacturing Co., 257 Iowa 1127, 136 N.W.2d 276 (1965), after remand, 260 Iowa 30, 148 N.W.2d 425 (1967). Long, the manufacturer, ended Hauff's distributorship on short notice, leaving Hauff with unsold goods. The Supreme Court of Iowa held that Long breached the contract by giving Hauff too little notice, so that it was unable to sell items on hand. As the court saw things, had proper notice been given, Hauff could have sold its inventory. The court computed damages by determining the market value of the inventory had Hauff been continued as a dealer, less the value of the inventory to a non-dealer. Hauff was sacked as a distributor; Nahed quit, protesting Kohler's direct sales. The theory of breach thus differs, as does the theory of damages. Plaintiff in Hauff put into evidence the market value of its inventory on the date before the breach--not the purchase price, but the current market value--and the market value after the breach. It received the difference. These two measures of market value are the very things missing from this record. Far from assisting Nahed, Hauff supports Kohler.
 
 
 8
 Thus we arrive at the question whether the judgment should be reversed outright, or whether the judgment should be vacated and the case remanded for a new trial on damages. We think that reversal is the only option proper on this record. To succeed on the theory we have discussed, Nahed needed to compute the market value of its inventory in, say, 1985, and compare that with the market value if all sets of parts were complete. It did not do so. Indeed, it never presented the jury with an estimate of the market value of its inventory at any particular time; it did not go beyond proving the purchase price of the inventory years earlier. The record does not contain any evidence from which one might determine (a) the market value of Nahed's inventory in the mid-1980s, and (b) the market value this inventory would have had with fewer broken sets (plus an estimate of the portion of broken sets attributable to Kohler's direct sales, as opposed to Nahed's own sales). Kohler challenged Nahed throughout these proceedings to introduce evidence on these questions; Nahed elected not to do so. Having made this choice, Nahed, which has the burden of persuasion, must live with the resulting record. This record could not support anything but a wild guess concerning any proper theory of damages. Guesses and speculation will not do. Murray v. Holiday Rambler, Inc., 83 Wis.2d 406, 432-34, 265 N.W.2d 513, 526-27 (1978). The only appropriate step therefore is to bring the case to an end.
 
 
 9
 The judgment based on "inventory damages" is reversed. The other elements of the award have not been appealed and are not disturbed. The case is remanded so that the magistrate judge may enter a judgment limited to items that the parties have not presented to us on appeal.